Grafton,
March 1, 1932.

F. Ernest Pulsifer *& a.* v. Chester G. Walker *&a.*

*McLane, Davis & Carleton (Mr. Davis* orally), for the plaintiffs.

*Fred P. Carr, Robert W. Upton* and *Laurence I. Duncan (Mr. Duncan* orally), for the defendants.

BRANCH, J. I. The petition in this case is properly brought under the declaratory judgments act (Laws of 1929, *c.* 86). The plaintiffs' claim of "a present right to lease said premises at the expiration of said present lease" and the adverse claim of the defendants that they are entitled to a renewal of the present lease exemplify one of the normal situations which the act was designed to cover. The effect of the statute in this case is "to enable the normal defendant to institute the proceedings." *Faulkner* v. *Keene, ante,* 147, 155.

II. The defendants assert that the plaintiffs have no "legal right to determine whether the lease has been satisfactory to them or not" for two reasons, which, logically, should be stated and considered in the following order, (1) because the words "providing said lease has been satisfactory to the said lessors" ought not to be in the lease at all and should be stricken out; (2) because the above clause if properly in the lease is illegal and void.

1. The findings of the court dispose of the defendants' claim that they are entitled to have the lease reformed by striking out the above quoted proviso. The only testimony produced by the defendants to sustain this claim tended to show that the language in question did not appear in the first draft of the lease, from which the court was asked to infer that it was fraudulently inserted in the final draft by the plaintiffs' attorney who prepared it. The court, however, reached a contrary conclusion and found that "The probabilities are that the option of renewal clause was in the original draft in the same language as appears in the document as signed." In legal effect this is equivalent to a definite finding that the proviso was in the original draft. *Moffie* v. *Slawsby,* 77 N. H. 555, 556; *Goddard* v. *Company,* 82 N. H. 225, 230. If the reference to "the probabilities" implies some doubt,

the language of the court "also contains the assertion that the doubt is not serious enough to affect the result. Not affecting the result, its suggestion helps no one." *Moffie v. Slawsby, supra.*

The argument of the plaintiffs that this finding was unsupported by the evidence does not require extended notice. We need only say that an examination of the record shows that the testimony on this point was conflicting and that the statements of the defendants themselves on the witness stand were by no means unequivocal. Under these circumstances the conclusion of the trial court cannot be revised here, and it follows that the defendants' prayer for reformation of the lease was properly denied.

2. The contention of the defendants that the proviso in question is illegal and void is equally without merit. It is true that some early cases indicated a feeling on the part of some courts that contracts providing that one party must perform to the satisfaction of the other before becoming entitled to compensation were for some reason objectionable. One reason suggested for this conclusion was that in such a situation there was no mutuality of obligation. Thus in *Folliard v. Wallace*, 2 Johns. 395, Chancellor *Kent*, writing in 1807, said, "If the defendant were left at liberty to judge for himself when he was satisfied, it would totally destroy the obligation, and the agreement would be absolutely void." The fallacy of this idea was soon perceived, however, and it no longer causes any difficulty. A promise is none the less a promise because the obligation which it creates is somewhat attenuated by conditions attached to it. "Parties to a contract may lawfully stipulate that performance by one of them shall be to the satisfaction of the other. The obligation of a contract is not destroyed because it contains such a provision, as Chancellor Kent seems to have believed." *Burch*, J. in *Hollingsworth v. Colthurst*, 78 Kan. 455.

Another suggestion, which seems to have been peculiar to this jurisdiction, was that a stipulation for performance by one party to the satisfaction of the other was unenforceable because it would result in making the latter the judge of his own case. This idea first made its appearance in the case of *Smith v. Railroad*, 36 N. H. 458, 490, which was decided in 1858, and it received casual mention in the later cases of *Janvrin v. Exeter*, 48 N. H. 83, 85, 86, and *Boston & Maine R. R. v. Railroad*, 83 N. H. 312, 314. None of these cases rests upon the above stated proposition as a ground for decision, and the notion that a proviso like the one before us involves the principle stated in the maxim, *aliquis non debet esse judex in propria causa, quia non potest*

*esse judex et pars*, today seems as fantastic as the Latin itself. See Broom's Legal Maxims, 117. In so far as the language of these cases gives countenance to that idea, they involve a misapprehension of the scope and meaning of the maxim and are not to be followed.

There is nothing illegal about the clause in question. "It is quite permissible to parties to enter into such contracts, and where the approval or satisfaction of the party is made a condition precedent to the right to receive compensation, or the contract price, for the article to be delivered, the Court has no right or power to dispense with the condition." *Baltimore &c. Co.* v. *Brydon*, 65 Md. 198. "We know of no reason of public policy which prevents parties from contracting that the decision of one or the other shall be conclusive." *Campbell &c. Co.* v. *Thorp*, 36 Fed. Rep. 414.

From the foregoing discussion it follows that the first question transferred by the trial court must be answered in the affirmative.

III. There has been a wide diversity of opinion as to the extent of a party's power to declare himself dissatisfied under a contractual provision requiring that he be satisfied upon some point before he shall become obligated to perform. See 6 R. C. L. Tit. Contracts: ss. 333, 334. In each case a new problem of interpretation is presented by the language of the contract and the surrounding circumstances. Whether the good faith of such a party may be inquired into and whether his dissatisfaction must be based upon reasonable grounds are controversial questions which we need not consider at this time, for the actuality of the plaintiffs' dissatisfaction is not questioned by the defendants, and the plaintiffs have tried their case upon the theory that they "must have had reasonable grounds for their refusal to renew the lease." The grounds for their dissatisfaction have been frankly disclosed. They are in brief, (1) a large increase in taxes and (2) an opportunity to lease the premises upon more favorable terms. The question whether these are "legal reasons" has been transferred.

The defendants take the position that "the proviso must relate to performance by the lessees" and to this alone, and that since the lessees have performed all their obligations satisfactorily, they are entitled to a renewal of the lease.

We find nothing in the language of the lease which calls for such a limited construction as the defendants suggest. In drawing the proviso it was obviously assumed that as the end of the term approached, the lessors would reappraise the situation and determine whether "said lease" had been satisfactory to them. Attaching to the words their ordinary meaning, this is a much broader question than the in-

quiry whether the conduct of the lessees had been satisfactory. Satisfaction with "said lease" implies satisfaction with the results of five years' operations under it, and the satisfactory or unsatisfactory character of these results might well be influenced by many factors outside the conduct of the lessees. If the only factor to be considered were that of "performance by the lessees," it would have been easy to say so, but nothing of the kind was said in the lease. We see no ground upon which a limitation which the parties failed to express can be read into this instrument by implication.

This conclusion does not lead to any unjust result nor does it attribute to the parties an unreasonable or improbable purpose. Obviously the defendants were under no obligation whatever to renew the lease at the end of the term. They were clearly in a position where they could consider every aspect of "said lease" and every detail of the results of their operations under it in determining whether they desired a renewal. Apparently the plaintiffs wished to preserve for themselves a similar freedom of action. They adopted language appropriate to accomplish that purpose, and are now entitled to claim the benefit of it.

In determining whether a lease is desirable or "satisfactory," the most obvious consideration would seem to be the amount of rent payable thereunder, and next the amount of over head expense incident thereto. Both of these factors may reasonably furnish ground for dissatisfaction, and no reason occurs to us why they should not affect the judgment of the plaintiffs in appraising the results of the lease here involved. The second question transferred by the trial court is accordingly answered in the affirmative.

IV. The proceedings with reference to the admission of evidence which resulted in numerous exceptions by the defendants were of a character well calculated to try the patience of the trial court but not to invite favorable consideration here. In briefest outline they were as follows. The plaintiff, F. Ernest Pulsifer, testified that the defendants' lease was unsatisfactory because he had an agreement with another party by which he could increase the rent over a period of ten years. To this testimony the defendants excepted upon the ground that the agreement was in writing and the writing was the "best evidence" of its terms. The plaintiffs thereupon offered in evidence a document purporting to be a lease of the premises to the First National Stores, duly executed by the plaintiffs and purporting to be executed on behalf of the First National Stores by one Farnsworth under the seal of the corporation. The defendants then objected to

the admission of the writing upon the ground that Farnsworth's authority to bind the purported lessee had not been proved. The plaintiffs then offered it "as a contract, valid or invalid, upon which the plaintiff is relying for the action which he has taken." After extended argument the document was excluded. The witness then testified that under his agreement the plaintiffs were to receive a rental of $250 per month for the whole first floor of the block for five years and $275 per month for the next five years. To this the defendants again excepted upon the ground that "the writing will be the best evidence." Subsequently the defendants stated that their objections to the admission of the writing were withdrawn, but it was not again offered in evidence by the plaintiffs. It is now argued that the "admission of secondary evidence when the writing was at hand was error."

This position is untenable. It was not essential to the plaintiffs' case that they prove the existence of a new lease or a valid agreement for a future lease, but having asserted their dissatisfaction with the defendants' lease because they could obtain better terms elsewhere, it was permissible, if not essential, for them to demonstrate [the reality and substantiality of their belief that this could be done.] Obviously the fact that they had gone so far as to execute a new lease to another party helped strongly to complete this demonstration, and [for the purpose of proving that fact the new lease was admissible even though its execution by the named lessee was not fully shown.] Thus considered, it stood as an utterance of the plaintiffs indicating circumstantially their state of mind and should have been admitted upon the ground which was well stated by counsel when the offer was made. I Wig., Ev. s. 266; III Wig., Ev. s. 1790. It was also admissible upon the broader ground that "When the execution of a document is *not in issue*, but *only the contents* or the fact of the existence of a document of such a tenor, no authentication is necessary." IV Wig., Ev., s, 2132. The question whether the lessee named in the new lease had become bound by the terms thereof did not affect the rights of either the plaintiffs or the defendants. Hence the execution of the document was not in issue. The plaintiffs merely sought to prove "the existence of a document of such a tenor," and for this purpose they were entitled to make "autoptic proference" of the writing. II Wig., Ev. s. 1151.

The defendants having brought about the exclusion of this document upon an extremely technical and legally untenable ground, it would be a strange rule of law which would give them a new trial be-

cause the plaintiffs were permitted to introduce other evidence of their agreement with the putative lessee. There is no such rule of law. The rule requiring the production of documentary originals, which the defendants seem to have had in mind, applies only when "the purpose is to establish its [a document's] terms." When the purpose is only to establish a collateral fact, the rule is not applicable. II Wig., Ev. ss. 1242, 1252; 5 Chamb., Ev. s. 3583. Here the purpose of the plaintiffs' testimony was to show that they had substantial grounds for believing that they could rent the premises upon more advantageous terms. Proof of this fact did not necessitate the establishment of the terms of the lease which had been drafted. The plaintiffs' state of mind was a purely collateral fact requiring the production of no documentary original for its proof. "When a person's *knowledge or belief* about a document is material, the knowledge or belief may be shown as a fact separate from the document's terms, without producing it." II Wig., Ev. s. 1243.

The case of *Putnam* v. *Goodall*, 31 N. H. 419, 424, cited by the defendants, although of doubtful soundness (See II Wig., Ev. s. 1246) is not inconsistent with the above conclusion. It was there held that the fact of tenancy could not be proved without producing the lease. The case must therefore be regarded as holding that the question of tenancy directly involved the terms of the lease and could not properly be regarded as collateral. The broad language used by the court in that case when stating the general rule as to documentary originals is not inconsistent with the limitation stated above with reference to collateral facts, which received clear recognition in the case of *Straw* v. *Jones*, 9 N. H. 400, 403.

With reference to the closely related parol evidence rule it should also be pointed out that "It is a part of that rule that an oral transaction, though reduced to writing, can be availed of where other parties are concerned, and the oral transaction is as between them a material one." II Wig., Ev. s. 1253; IV Wig., Ev. s. 2446. Thus in *Johnson* v. *Elliot*, 26 N. H. 67, 76, it was held that if a contract between one of the parties to the suit and a third person is material to the right of action, what was said by those persons at the time relative to the contract is admissible.

As a result of the foregoing conclusions it follows that there should be

*Judgment for the plaintiffs.*

All concurred.