Thomas MINCIELLI and Renee Mincielli,
Plaintiffs-Respondents,

v.

SLOAN'S MOVING AND STORAGE COM-
PANY, a Corporation, Defendant-
Appellant.

No. 45595.

Supreme Court of Missouri,
Division No. 1.

June 10, 1957.

---

Chapman, Schwartz & Chapman, Adolph K. Schwartz, St. Louis, for appellant.

Finley, Lucas & Arnold, John A. Arnold, Ralph T. Finley, St. Louis, for respondents.

HOLMAN, Commissioner.

Plaintiffs, Thomas and Renee Mincielli, instituted this action in an effort to recover $13,096 which was alleged to be the value of certain personalty stored by them in defendant's warehouse located on Hodiamont Avenue in St. Louis, Missouri. That warehouse was destroyed by fire on January 15, 1951. The first count of plaintiffs' amended petition sought recovery upon the theory of a bailment and the failure of defendant to return the property. The second count alleged that defendant orally agreed to store plaintiffs' goods in its fireproof warehouse located at 5619 Delmar Boulevard in St. Louis, and violated this agreement by storing same in the Hodiamont warehouse. The verdict of the jury was for the defendant on the first count, but plaintiffs obtained a verdict for $8,000 on the second count. Defendant has appealed from the ensuing judgment. Since plaintiffs did not appeal we will consider the judgment on Count I as final and will not state any evidence which pertained solely to that count.

Upon this appeal defendant contends that (1) the court erred in failing to direct a verdict for it on Count II; (2) error was committed in the giving of plaintiffs' Instructions Nos. 3, 7, and 8; and (3) the court erred in excluding defendant's Exhibits "B", "D" and "F".

In October 1946, plaintiffs were making arrangements to move from Kearney, New Jersey, to St. Louis, Missouri, where Renee planned to open a gift shop and where her husband was to become employed by McDonnell Aircraft Corporation. Renee made a trip to St. Louis and rented a storeroom on Clayton Road for her gift shop. She then learned from the telephone directory that defendant had a fireproof warehouse and called the office of defendant and made tentative arrangements for Sloan's to take care of the unloading of their goods from a freight car which would subsequently arrive in St. Louis, some of which goods were to be stored by defendant.

Shortly before October 21, 1946, plaintiffs arrived in St. Louis. Mr. Mincielli immediately went to Sloan's office on Delmar Boulevard and made arrangements as indicated by the following: "I went to Sloan's and I spoke to one of the Sloans, and made arrangements there that when the car arrived, Sloan's, with their equipment and personnel, would proceed to the car and unload it under my direction—items which were to go into storage and other items which were to go to the gift shop on Clayton Road. At that time, Mr. Sloan assured me that this was the warehouse, and things would be taken care of."

When the car arrived Mr. Mincielli went to the freight yard with Mr. Sloan, on October 21, and supervised the unloading of the freight car. He designated which of the goods would be taken to the gift shop and which was to go into storage. Upon that occasion, according to Mr. Mincielli, the following conversation occurred: "At that time, just about the time we were winding up this unloading of the car, I again asked Mr. Sloan, I said, 'Mr. Sloan, you are really going to take care of us?' And he said, 'This will be in a fireproof

warehouse. I assure you, Mr. Mincielli, you have nothing to worry about.' He said, 'However, I have a procedure or a necessary thing that they do. They take this, whatever goods they receive, they take it to a transfer place or something, and inspect it, and then they repair it or whatever has to be done, and then they take it over to permanent storage.' And he said, 'I assure you it will take no more than several days.' He said, 'No more than ten days or two weeks.' And we shook hands on that and I took him at his word."

Mrs. Mincielli testified that in July 1949 they withdrew certain furniture from storage and that she placed fourteen cases of items from the stock of her gift shop in storage with defendant.

■ In considering the question as to whether defendant's motion for a directed verdict should have been sustained we will view the evidence in the light most favorable to plaintiffs, giving to them the benefit of all favorable inferences arising therefrom, and shall disregard the evidence of defendant unless it aids plaintiffs' case. Wapelhorst v. Lindner, Mo.Sup., 269 S.W.2d 865. In support of its contention that plaintiffs failed to make a submissible case on the second count defendant argues that there was no identification of the parties to the alleged oral agreement; that the terms thereof were too vague; that there was no meeting of the minds on the alleged contract, and that plaintiffs accepted the storage at Hodiamont as performance by defendant.

Mr. Mincielli testified that his conversations were had with Mr. Sloan. The evidence disclosed that Mr. Lee J. Sloan was president and Mr. T. V. Sloan was vice-president and general manager of defendant corporation in 1946. Mr. Lee J. Sloan was in the courtroom during the trial and Mr. Mincielli stated that he was not the man with whom he had dealt. However, Mr. T. V. Sloan did not appear at the trial and it does not appear that Mincielli had an opportunity to identify him. In this situation the jury could reasonably have found that the conversations in question were had with Mr. T. V. Sloan.

■ We have also concluded that the terms of the agreement were sufficiently definite and should have been understood by each party. It is apparent that the objective which was uppermost in the minds of plaintiffs was to obtain storage in a fireproof warehouse. Mrs. Mincielli testified that she originally called defendant because it advertised fireproof storage in the telephone directory. It appears also that the letterhead used by defendant at that time showed a picture of its 7-story building located on Delmar and the words, "New Modern Fireproof Storage Warehouse." In his first conversation with Mr. Sloan, Mr. Mincielli was assured that his goods would be stored in that (fireproof) warehouse. In the second conversation he was told, "This will be in a fireproof warehouse." The jury could reasonably have found from this testimony that the parties had agreed that defendant would store this personalty in a fireproof warehouse, or, as plaintiffs submitted the issue in their Instruction No. 3, that defendant would store the same in its "warehouse at 5619 Delmar Boulevard."

■ In this connection, however, it would perhaps be apropos to state that we have concluded that the court erred in giving Instruction No. 3 which, in addition to permitting a recovery for the goods stored on October 21, 1946, authorized a recovery for the items stored in July 1949. That instruction, after requiring a finding of the agreement in 1946 for storage in the warehouse on Delmar Boulevard and the violation of that agreement by the storage of said goods, without the knowledge or consent of plaintiffs, at its Hodiamont warehouse, further hypothesized that plaintiff Renee, while under the belief that plaintiffs' goods were stored at the Delmar warehouse, ordered defendant to pick up such additional goods and store them

with the other goods and effects already held in storage. That submission was not supported by the evidence. We have carefully read the testimony of Mrs. Mincielli and cannot find any statement that she directed defendants to store these goods with the other goods already in storage. It may be that her failure to so testify was an oversight, but, on the record before us, the foregoing submission was error.

The next contention of defendant is that its motion for a directed verdict should have been sustained because plaintiffs had accepted storage at the Hodiamont warehouse as performance by defendant of the alleged oral agreement. There is no basis in the record for this position unless one or more of excluded Exhibits "B", "D" and "F" are held to be admissible. Therefore, these two contentions will be considered together with our attention first being directed to the question of the admissibility of said exhibits. Exhibits "B" and "D", together with Exhibit "G" (admitted in evidence), and certain form letters of transmittal, were all admittedly received from the defendant by Mr. Mincielli a day or so after the goods were placed in storage. Exhibit "B" was a storage order form, appropriately filled out, which defendant requested that Mr. Mincielli sign and return to it. He retained possession of that instrument but did not sign it. Exhibit "D" is an unsigned warehouse receipt, apparently prepared by defendant, which lists the property placed in storage and on the back thereof is printed, in twelve numbered paragraphs, the "Terms and Conditions of Within Warehouse Receipt." Exhibit "F" is a warehouse receipt endorsement which was mailed to Mr. Mincielli after the additional goods were placed in storage in July 1949. It described the goods stored and contained a provision that it should be attached to and made a part of the original warehouse receipt. Each of these exhibits had certain blank spaces on the face thereof which were filled in so as to indicate that the goods in question were stored in a

warehouse located at 1167 Hodiamont. The objection interposed to Exhibit "B" was that it had not been signed by Mr. Mincielli and was prepared after the goods had been received by defendant. The primary objection to Exhibits "D" and "F" was that they had not been signed by defendant as required by Section 406.030 RSMo 1949, V.A.M.S.

■ We have concluded that the foregoing exhibits were admissible in evidence and hence the trial court erred in sustaining the objections of plaintiffs thereto. We recognize that the aforementioned statute requires that a warehouse receipt be signed by the warehouseman. We are also cognizant of the general rule that the execution of a private document or writing must be established before it may be admitted in evidence. Cummins v. Dixon, Mo.Sup., 265 S.W.2d 386. However, "When the execution of a writing is not in issue but only the contents or the facts of the existence of such a writing, proof of execution or authenticity is unnecessary." 32 C.J.S. Evidence § 733(b), p. 648. To like effect, see also, Wigmore on Evidence, Vol. VII, Section 2132; Alexander v. Campbell, 74 Mo. 142; Steiner v. Tranum, 98 Ala. 315, 13 So. 365; Prescott v. Fletcher, 133 Ga. 404, 65 S.E. 877; Pulsifer v. Walker, 85 N.H. 434, 159 A. 426, 81 A.L.R. 1052; Parnell v. Pungs, 190 Mich. 638, 157 N.W. 357.

■ It is clear that the instant documents were prepared by defendant and mailed to plaintiffs who admitted that they received and retained the same. There was no issue as to the execution or validity of these instruments. They were offered by defendant in an effort to prove that plaintiffs had notice that their goods were stored in the Hodiamont warehouse. The fact that these documents (showing storage in Hodiamont) were prepared by defendant and transmitted to plaintiffs shortly after plaintiffs contend the oral agreement was entered into was relevant as tending to prove that no such agree-

ment was entered into. The documents were also relevant as tending to establish the contention of defendant that plaintiffs accepted storage in Hodiamont as compliance with the agreement. Under the instant circumstances the fact that the instruments were unsigned would not affect the notice imparted to plaintiffs by the information typed on the face thereof. Since they were offered for an incidental or collateral purpose we have the view that the foregoing authorities are sufficient to support our conclusion that those instruments were admissible.

■ We will next consider the contention of defendant that plaintiffs should be held, as a matter of law, to have accepted storage at the Hodiamont warehouse as performance of the alleged agreement. It is our view that this contention is not meritorious. Admittedly, plaintiffs signed Exhibit "G" which is designated as a signature card. That card contains an acknowledgment that plaintiffs had received the warehouse receipt and that "the terms and conditions contained in Receipt are accepted." However, it is our view that the "terms and conditions" referred to in the quoted statement has reference to the back page of the receipt which is headed "Provisions, Limitations, Terms and Conditions of Written Warehouse Receipt," and under which the various terms and conditions are set out in twelve numbered paragraphs. The provision in question would not seem to refer to the portion of the warehouse receipt where it is stated that the goods are stored in Hodiamont. Furthermore, even if we assume that plaintiffs had knowledge that the goods were stored in Hodiamont, we do not think it may be said as a matter of law that they accepted storage there as compliance with the agreement unless it is further shown that they knew that the Hodiamont warehouse was not fireproof. Moreover, we call attention to the testimony that Mr. Sloan had stated to Mincielli that the goods were to be taken to a temporary transfer place for ten days or two weeks before being placed

in permanent storage. It is entirely possible that plaintiffs may have thought the reference to Hodiamont was a designation of the place where their goods were then held in temporary storage. Under all the circumstances, we rule that the instant issue is one to be determined by the jury. The case of Woolfolk v. Jack Kennedy Chevrolet Co., Mo.App., 296 S.W.2d 511, upon which defendant relies in support of a contrary ruling, has been carefully considered, but we have concluded that it may be distinguished from the case before us upon the factual situations involved.

Since this case must be retried we will briefly note the further contentions relating to alleged errors in certain instructions given at the request of plaintiffs. We have already indicated that the portion of Instruction No. 3 permitting recovery for the goods stored in July 1949 should be deleted therefrom, unless, upon another trial there is evidence that Mrs. Mincielli specifically instructed defendant to store those goods with the goods previously stored, and that defendant impliedly agreed to that stipulation by the acceptance of the goods upon the terms stated. We also suggest that the remainder of that instruction would be more clearly in accord with plaintiffs' theory of recovery if it hypothesized that defendant agreed to store the goods in its *fireproof* warehouse on Delmar, and violated that agreement by storing same in its *nonfireproof* warehouse on Hodiamont.

■ We see no merit in the contentions that the court erred in giving Instructions Nos. 7 and 8. Instruction No. 7 is a measure of damage instruction which states that plaintiffs are entitled to recover the difference between the reasonable market value of their goods immediately before and after the fire. That instruction was supported by the evidence and was in accordance with the well-established rule relating to the measure of damages for injury to personalty. Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S.W.2d 657. Instruction No. 8 is simply a definition of

the phrase, "reasonable market value." Since it follows a definition we have heretofore approved, we rule that the court did not err in giving it. Connoley v. Beyer Crushed Rock Co., 355 Mo. 684, 197 S. W.2d 653.

The judgment is reversed and the cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM:

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.