THOMASON *v.* HESTER MOBILE HOME MFG., INC.

5-2773                                     361 S. W. 2d 94

Opinion delivered October 15, 1962.

[Rehearing denied November 12, 1962.]

*Claude B. Brinton* and *Bon McCourtney,* for appellant.

*Frierson, Walker & Snellgrove,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, Hester Mobile Home Manufacturer, Inc., was, during the period of this litigation, a manufacturer of trailers in Blytheville, Arkansas, and appellant, Howard Thomason, was a retail dealer in such vehicles at Jonesboro. In March and April, 1961, negotiations were entered into for the purchase of six vehicles by appellant, and these were sold

to him for the total sum of $19,247.30. Of this amount, $8,558.00 has been admittedly paid, and the present litigation refers to the difference in the sale price, $10,689.30, which appellee contends remains unpaid; appellant contends that this amount of money was paid to Charles Russell Hester, the President of appellee corporation.[1]

On May 31, 1961, the corporation instituted suit against Thomason alleging that appellee and appellant had entered into an agreement whereby the former would sell to the latter certain trailers; that Thomason would procure the financing of such trailers, held in stock by him, under a floor plan arrangement with commercial finance companies, and would remit to appellee the portion of the purchase price of each trailer financed under such an arrangement, the balance to be paid as each trailer was sold. Six trailers were sold under this arrangement.

The complaint further alleged that Thomason had consummated a floor plan agreement with a finance company, but had failed and refused to remit the proceeds to Hester. It was further alleged that Thomason had been entrusted with the certificates of title to the vehicles in reliance upon his agreement to procure floor plan financing, but that appellant had encumbered the vehicles under his floor plan financing arrangements, and had thereby defrauded appellee of the title certificates; an equitable lien was claimed upon the vehicles, inferior to any *bona fide* liens which had been placed thereon. Further, "Upon information and belief, plaintiff alleges that the defendant has appropriated the proceeds of the floor plan financing arrangements on the said vehicles into other assets of his business carried on as College Trailer Sales, and has sold certain vehicles and has notes or accounts receivable therefor. Plaintiff alleges that the defendant has no known assets out of which he can collect except the assets of the College Trailer Sales and that the defendant has already removed one of the trailers from the State of Arkansas and may remove others or sell

---

[1] The proof throughout refers to Hester as the actual appellee.

them to *bona fide* purchasers, leaving the plaintiff without any means of collecting the indebtedness due him. Plaintiff alleges that the defendant is insolvent and is concealing his assets and is about to remove the said trailers or sell them into the hands of persons who would be in the position of *bona fide* purchasers, from whom plaintiff would be unable to collect the purchase money due upon the said trailers." The prayer of the complaint sought judgment against Thomason for the sum of $10,-689.30, together with interest, and further sought the appointment of a receiver "to take charge of all of the trailers sold to the defendant by the plaintiff and the proceeds of sale of any such trailers already sold, including notes, accounts receivable, or any other form of proceeds, and to take charge of all of the other assets of College Trailer Sales and to hold the same pending further orders of this Court, and that the said assets be sold in satisfaction of the judgment in favor of the plaintiff, and for all proper relief."

The Court appointed the Circuit Clerk of Craighead County as temporary receiver, and directed that he serve in such capacity "under his own bond". Appellant filed a motion to discharge the receiver, asserting that he was not indebted to appellee, that he was solvent, and that appellee had an adequate remedy at law. Upon hearing on the motion, the Court discharged the receiver,[2] but impounded four trailers until the cause was heard on the merits. On June 14, Thomason filed his answer, denying the allegations in the complaint, and stating that he had paid the alleged indebtedness to appellee in full. A cross complaint was filed wherein it was asserted that the appointment of the receiver had caused appellant to suffer embarrassment with his creditors, a loss of sales, and injury to his reputation, and damages were sought in the sum of $10,000. These allegations were denied by appellee, and on June 19, appellant moved to transfer the case to the Circuit Court of Craighead County. This motion was denied, and after the filing of several other motions, the cause proceeded to trail. At the conclusion

---

[2] Apparently the mortgage liens against the trailers had been discharged subsequent to the filing of the suit.

thereof, the court entered its decree rendering judgment in favor of Hester Mobile Home Manufacturer, Inc., against Thomason in the amount of $10,698.30, together with interest from April 7, 1961, to November 20, 1961, or a total judgment of $11,083.62, with interest at 6%, and directed that if the judgment be not paid within 10 days, the commissioner of the court sell the trailers previously impounded, at public auction to the highest bidder for cash. The Court further held that there had been probable cause for the appointment of a receiver, and that appellant sustained no damages by the appointment of the receiver. From the decree so entered, appellant brings this appeal. Appellee cross appeals from the order of the court which denied the assessment of a reasonable attorney's fee and the assessment of an expert witness fee for Linton Godown, questioned documents expert, who testified for appellee. Though appellant urges several points for reversal, only three are actually pertinent to the question at this time, viz:

"The Court erred in granting an order of receivership."

"The Court erred in overruling Defendant's Motion to transfer to Law Court and in retaining jurisdiction of the cause after the hearing upon receivership."

"The Judgment is against the preponderance of the Evidence."

The allegations in the complaint were sufficient to justify the Court in appointing a receiver. In 75 C.J.S., § 26, p. 690, we find, "A receiver may be appointed on the ground of fraud in obtaining property or where there is fraud coupled with other facts or circumstances, such as the insolvency of defendant, or insolvency and other matters."[3]

Appellant argues at length that the court erred in overruling his motion to transfer the case to the Circuit Court, after the receivership had been dissolved and the receiver discharged, contending that there was no equit-

---

[3] Appellant also devotes some portion of his brief to arguing that the Court erred in not requiring a bond for the receiver, but a discussion of this point is immaterial in determining this cause.

able issue to be determined. Appellant asserts that this was simply a suit for a debt upon six trailers. We do not agree for several reasons. In the preceding paragraph, it has been pointed out that the appointment of the receiver was justified, and the appointment of the receiver was, of course, a matter properly within the province of the Chancery Court. We have held that when equity assumes jurisdiction for one purpose, it assumes jurisdiction for all purposes, *Goodman* v. *Powell,* 210 Ark. 963, 198 S. W. 2d 199. Furthermore, the allegations of the complaint were grounds for equity jurisdiction.[4] Appellant says that these allegations were not sufficient for the reason that the assertion that Thomason had promised to finance the trailers, but did not subsequently pay the money over to appellee, related to an event to happen in the future, and consequently did not support the allegation of fraud or deceit. This argument is erroneous. The case of *Wilson* v. *Southwest Casualty Ins. Co.,* 228 Ark. 59, 305 S. W. 2d 677 involved the question of a claim adjustor obtaining a release from a Mrs. Pelton on the fraudulent representation that he would settle with the Peltons' insurance carrier. This court said, "A promissory representation may be the basis of fraud in procuring a release if the promissor never intended to fulfill the promise and made it for the purpose of obtaining the release". We have likewise held in several other cases. No merit is found in this contention.

This brings us to the principal, and controlling, question in this litigation. That question, stated simply, is, "Has Thomason paid the total indebtedness due Hester?" Summarized, appellant's contention is that he paid Hester $10,537.80 in cash on Wednesday, April 5, in the latter's office. He stated that he borrowed $4,400 of this money from an uncle and aunt in Missouri, and that he already had the balance of the money in cash. Thomason testified that Hester gave him a receipt for the money but that the receipt didn't show what it was for and that he accordingly "took a couple of invoices lay-

---

[4] Actually, appellant filed an answer and cross complaint in the Chancery Court several days before moving to transfer the case to the Circuit Court.

ing on his desk and wrote out the receipt and he signed it and put his seal on it''. By deposition, Bill Parker, a former employee of Hester, testified that he was standing out side the office on the 5th, and could see Hester and Thomason inside. He stated that appellant purchased a chair and some tires on that occasion, and that he saw Thomason and Hester ''changing bills'', *i.e.*, Thomason handed Hester some money and Hester, in turn, handed some money back to appellant, ''Thomason had quite a roll but I don't know how many he give Hester''. When asked if he observed anything unusual about the transaction, he replied, ''Just the cash that is all.'' Parker testified that all of the invoices [or bills of sale][5] were given to Thomason on the following Saturday. Appellant stated that he received all of the bills of sale on Saturday, April 8; that he received the white, yellow, and pink copies, and that Hester kept the blue copies. However, Thomason stated that he did not receive the yellow copy of Invoice No. 146.

Hester testified that Thomason was in his office on Wednesday, April 5, but, they were ''straightening'' papers on two trailers that had previously been purchased. Appellee stated that the negotiations for the sale in question were entered into on Friday, April 7; that he gave all the bills of sale to Thomason at that time, and the latter was supposed to floor plan the trailers the following Monday, and then pay him. According to his evidence, several requests were made to Thomason for payment, all without success until April 17, at which time appellant gave appellee two checks in the total amount of $8,558.00; that these checks were the only payments he had received on the trailers. Hester denied emphatically that any money was paid to him on April 5, or that he gave a receipt for any such payment. Though there is much testimony by each party as to the details of the transaction, including payments on particular trailers,

---

[5] The documents are headed "Bill of Sale and Invoice" and the parties use the terms interchangeably throughout. We, therefore, do likewise, and, in this instance, the document did constitute a bill of sale, as well as invoice. We have not overlooked our holding in *Morrison* v. *Bland*, 226 Ark. 514, 291 S. W. 2d 243, to the effect that an invoice, standing alone, is not regarded as a contract, or evidence of title.

the real issue, determinative in this litigation, as previously stated, is whether the cash payment of $10,537.80 was made to Hester in his office on Wednesday, April 5. Appellee contends that the "receipt" is the lower part of the yellow copy of Invoice 146, and that the language of the receipt was placed on it by Thomason subsequent to receiving it. Indeed, it is a strange looking receipt! Quite obviously, the paper is the bottom portion of a bill of sale. The language at the top, admittedly written (actually hand printed) by Thomason, reads as follows: "Received of Howard Thomason, $10,537.80 by cash, which represents payment in full for the following trailers:—Serial No. 2181033, 5110-1030 and 5110-1029. A balance of $8,558 on the *following* trailers—(Serial No. 5110-1018, 51101032 and 5110-1029) will be due and payable on or before April 25, 1961. The sum of $19,095.80 represents payment in full of all debts past and present owed to Hester Mobile Homes Inc." Beneath this language is the printed form appearing on all the bills of sale to-wit: "State of Arkansas, County of Mississippi, Personally appeared before me, the undersigned authority, ................................................ to me personally known, who stated he is ........................................, of the HESTER MOBILE HOME MANUFACTURERS, that he is duly authorized to execute the foregoing instrument for and in the name and behalf of said corporation. Subscribed and sworn to, before me, this....................day of ....................19............ My commission expires....................................19............ Notary Public............................." In the first blank appears the written name of Hester, admittedly his signature; in the second blank appears the word "President", which is typed, and is a carbon copy; the date is given as 5 April 61. A faint outline of a corporate seal appears near the bottom right hand corner. Linton Godown, of Memphis, Tennessee, expert on the subject of questioned documents,[6] who conducts his examinations by special

---

[6] Mr. Godown is a graduate of Ohio State University, is a member of the American Society of Questioned Document Examiners, a Fellow in the Questioned Documents Section of the American Academy of Forensic Sciences, and a member of the Chicago Chapter of Photographic Scientists and Engineers. He has lectured at Indiana University and has testified in various courts of record in Arkansas and other states.

cameras, lens, various types of microscopic and lighting devices, and special transparent test plates, testified that he had, by various experiments, made an examination of the blue copy of Invoice 146, the "receipt", and all of the blue forms retained by Hester in the transaction with Thomason, together with a number of blank invoice forms or bills of sale. It was his opinion that the yellow receipt was the lower portion of one of the yellow forms used as bills of sale and invoices by Hester Mobile Home Manufacturers, and that it was taken from the yellow copy of Invoice No. 146.

Godown's findings, along with pertinent observations of the trial court, are summarized in an oral opinion rendered at the close of the case. The Chancellor stated, "In looking at the receipt that the defendant produced before the court, on which he relies and states it is the true reflection of the transaction that took place in this case, the Court notices that the receipt, which is Exhibit 3, that the defendant claims, that trailer 5110-1029 was included in the $10,537.80 cash that he claims to have paid to the plaintiff. Also in his receipt he says that a balance of $8,558.00 is due on the following trailers, which would be payable on or before April 25, 1961, and in this purported receipt, the same trailer appears, No. 5110-1029. So in his purported receipt here he claims credit for this particular trailer in the $10,000 payment, and yet he claims it is still due in the balance of $8,558.00, which is represented by these checks. So certainly, Gentlemen, the receipt, in that respect, contradicts itself. Also, there was produced before the court here, a handwriting expert and the court was careful to observe, in regard to his interpretation as to whether or not the Exhibit 3, the alleged receipt, was the yellow copy of Invoice No. 146. If the Court recalls the testimony correctly, there appeared a seal which was affixed to Invoice No. 146 and there also appeared to be a seal on alleged receipt, Exhibit 3. The Court was careful to note that in this testimony, the identification was not made by where the seal appears in relation to the writing, but the identification was made in regard to the measure-

ments from the right and left side of the paper and the bottom part of the paper. According to the proof produced by this expert, he overlapped the two seals in relation to the measurements of the paper, and they appeared to be identical.[7]

"Gentlemen, another observation the court has made in regard to this receipt here, it is written on the bottom of an invoice. There is no doubt that the plaintiff's signature appears in the affidavit, 'State of Arkansas, County of Mississippi, etc.' and recites the plaintiff's name and states in it that he is President of Hester Mobile Homes Manufacturers, and the date is filled in, 'Subscribed and sworn to before me on this 5th day of April, 1961.' There is a place for a Notary Public to sign. The Court does not believe that anyone would make out a receipt in this fashion. I believe the defendant testified Mr. Hester did write out a receipt that was not satisfactory to him and he sat down and wrote this out himself. The receipt here appears not to have been written in any great amount of haste. The left hand margin is exactly even. The space between the printed and written words is very neat, and even on the face of this receipt. The defendant himself says he filled in this information and that Mr. Hester signed it.

"Gentlemen, in view of the evidence before the court, the court is going to find that this receipt is the bottom half of Invoice 146."

There are other facts which support the conclusion of the trial court. For instance, on April 17, the two checks totaling $8,558.00 were given to Hester. According to Thomason's contention, this settled his indebtedness completely in the transaction (since he stated he had already paid the $10,537.80 in cash); yet there is no notation on either check to the effect that those payments represented payment in full. One of the strongest circumstances supporting the finding that the language on the "receipt" was superimposed subsequent to the

[7] Godown also testified that the word "President" appearing in carbon on the yellow receipt was in precisely the same location as the word "President" on the blue invoice of No. 146.

time of the transaction, relates to a letter written by Hester to appellant on May 1. In this letter, Hester states, "* * * I want a check today for the amount of $10,537.80". Thomason replied to this communication by writing a message on the bottom part of the letter. This message complained that one of the trailers needed repair work, was not as represented, and was not satisfactory. *Not one line is written to the effect that Thomason had already paid Hester in full!* We think it inconceivable that an individual can receive a statement from another for $10,500, which sum has already been paid, and yet in answering, never mention that fact; rather, we are of the opinion that any person so billed, would immediately get in touch with the sender of the statement, and demand a reason for receiving a bill for an amount that had already been fully settled.

Another circumstance is pointed out by appellee which has some significance. In writing the letter, Hester actually made a mistake in the sum demanded, as the proper amount was $10,689.30. In his testimony, Thomason admitted that the amount shown in his receipt was "a few dollars off".[8] There is no testimony that the $10,537.80 figure was ever mentioned between the parties, and appellee contends that this circumstance reflects that appellant obtained the figure from Hester's letter of May 1, and then used it in writing the receipt.

Be that as it may, we are definitely of the view that the Chancellor's findings are supported by a preponderance of the evidence.

It follows that the decree on direct appeal is affirmed.

We think the court should have allowed the expenses incurred by appellee in obtaining the services of Linton Godown. Subsection (c) of Section 28-359, Ark. Stats., 1962 Replacement, provides as follows: "If a party, after being served with a request under Section 11 [§ 28-358] to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial

---

[8] The difference is actually $151.50.

thereof and if the party requesting the admissions thereafter proves the genuineness of any such document or the truth of any such matters of fact, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made." This is an exact copy of Rule 37(c) of the Federal Rules of Civil Procedure. In the case of *Akins* v. *McKnight* 13 F.R.D. 9, the District Court for the Northern District of Ohio, Eastern Division, stated, "There is presented a sworn denial of the requests, therefore, and not a failure to respond to requests. Under such circumstances, Rule 37(c) is mandatory that an order for expenses shall be made unless the court finds that 'there were good reasons for the denial or that the admissions sought were of no substantial importance'." In his answers to Requests for Admissions, Thomason, under oath, denied that Exhibit No. 3 (the receipt) was the bottom portion of the bill of sale and Invoice No. 146. As previously pointed out, we think unquestionably, that the evidence at the trial established that the so-called receipt was the bottom portion of the yellow copy of Invoice 146. Certainly this fact was of substantial importance, and, for that matter, could have been admitted without completely jeopardizing appellant's defense, *i.e.*, appellant could still have claimed that the receipt was written on his copy of the invoice when such invoice was given to him. At any rate, the failure to admit the fact in question forced appellee to obtain the services of the questioned documents expert. Godown testified that he made a charge of $100.00 for the examination and report which had been submitted, and was charging a fee of $250.00 for attending the trial and preparing the photographs. This charge appears to us, under the circumstances, to be fair and proper, and there is no showing by appellant that it is not reasonable. In fact, appellant does not question the amount. We are also of the view that counsel is entitled to a reasonable fee for his efforts and time expended,

and that a reasonable allowance would be $150.00. Accordingly, the cause is remanded to the Chancery Court of Craighead County with directions to enter an order allowing the sum of $500.00 for expenses incurred in making proof of the matter denied in "Requests for Admission No. 2".

It is so ordered.