458 P.2d 825

**Irene SCHRIB and Alvin N. Schrib, Plaintiffs-Appellees,**

v.

**Leonard SEIDENBERG, M.D., Defendant-Appellant,**

**Wyeth Laboratories and American Home Products, Inc., Defendants-Appellees.**

No. 330.

Court of Appeals of New Mexico.
Aug. 22, 1969.

A. H. McLeod, Kelcher & McLeod, Albuquerque, for defendant-appellant.

Mary C. Walters, Toulouse, Moore & Walters, Albuqrerque, for plaintiffs-appellees.

Robert D. Taichert, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for defendants-appellees.

## OPINION

WOOD, Judge.

This case involves medical malpractice by Seidenberg (Leonard Seidenberg, M. D.) in injecting Sparine into plaintiff Irene Schrib. Dry gangrene resulted from the injection. The issues concern: (1) evidence of malpractice; (2) the damage award (excessiveness and inadequacy); (3) strict liability of the manufacturer of the drug; and, (4) denial of requested admissions.

### Evidence of malpractice.

█ Malpractice is a form of negligence. See Buchanan v. Downing, 74 N. M. 423, 394 P.2d 269 (1964); N.M.U.J.I. 8.1. Before a physician may be held liable for malpractice, there must be a showing that he departed from recognized standards of medical practice. Cervantes v. Forbis, 73 N.M. 445, 389 P.2d 210 (1964). In addition, that departure must be the proximate cause of the incident or occurrence which is the subject of the litigation. Buchanan v. Downing, supra.

Sparine is a major tranquilizer. The evidence shows there are three ways of

administering the drug—orally, intramuscularly or intravenously. The evidence also shows that under no circumstances should Sparine be injected into an artery.

Seidenberg testified he injected the drug into a vein. However, the trial court found that in injecting the drug, Seidenberg failed to follow generally accepted standards to prevent an inadvertent arterial injection; after inserting the needle, failed to make adequate observations to determine whether the needle had been inadvertently introduced into an artery, and actually injected the drug into an artery.

Seidenberg claims there is no evidence to support these findings. He relies on testimony that (a) the drug could be properly injected into the vein and then leak into the artery and (b) in giving intravenous injections one can get into an artery even while exercising the best of precautions and the best medical practice. This testimony expresses no more than "possibilities". See Buchanan v. Downing, supra.

■ Opposed to this testimony is the testimony of at least two of the expert medical witnesses. Their testimony directly supports the findings made by the trial court. If the "possibilities" relied on by Seidenberg can be considered as raising a conflict in the evidence, they do not aid Seidenberg on appeal. Conflicts are resolved in favor of the successful party and in support of the judgment. Los Alamos Medical Center v. Coe, 58 N.M. 686, 275 P.2d 175, 50 A.L.R.2d 1033 (1954).

■ Seidenberg also relies on testimony to the effect that " * * * there is no way in the world to know in this particular case * * * " exactly what happened. Thus, he attacks the finding that the injection was the proximate cause of the gangrene. In addition to testifying that in injecting the Sparine, Seidenberg departed from recognized medical standards, the expert medical witnesses gave their opinion, as a reasonable medical probability, that this improper injection was

the proximate cause of the gangrene and resultant consequences. See Buchanan v. Downing, supra.

The evidence of the expert medical witnesses substantially supports the findings as to Seidenberg's malpractice in injecting the Sparine.

*Damage award.*

The trial court awarded damages of $51,200.00. Seidenberg claims this amount is excessive, that he is entitled to a remittitur. Plaintiffs, by cross-appeal, claim this amount is inadequate, that they are entitled to an additur.

(a) Excessiveness.

■ Excessiveness is determined by: (1) whether the evidence, viewed in the light most favorable to plaintiffs, substantially supports the award and (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder. Sweitzer v. Sanchez, (Ct.App.), 80 N.M. 408, 456 P.2d 882, decided June 20, 1969 and cases therein cited.

Seidenberg claims the award resulted from passion and prejudice. He presents no basis for his conclusion. We have reviewed the record and find nothing indicating passion or prejudice on the part of the trial court. Compare Sweitzer v. Sanchez, supra.

■ Seidenberg also claims the award is not supported by substantial evidence. His view of the evidence as to damages and our comments thereon follow:

(1) Medical bills of $3,497.27. This is correct.

(2) All she lost was a part of her left thumb and left index finger. This is incorrect. The trial court found, and there is supporting evidence, that Mrs. Schrib had a 20% loss of function of her left arm and a 50% loss of function of the left hand.

(3) Mrs. Schrib lost wages for only a short period of time. She lost practically all of her wages in the year of her injury, (the incident occurring in January); had

a substantial reduction in wages for the following year; for the next eighteen months (up to trial) she had been working at the same job she held prior to the injury. We do not attempt to state the amount of lost wages for the time off work because the wages prior to injury are stated as gross income and the other wages are stated in terms of net income.

(4) Mrs. Schrib's ability to work has not been impaired to any great extent. Seidenberg relies on testimony that Mrs. Schrib would have difficulty in obtaining future employment because of her age (49). Seidenberg ignores testimony to the effect that Mrs. Schrib obtained her old job back because she had been one of the "better" waitresses, had been very loyal and her employer felt sorry for her. It ignores testimony that she would have difficulty in obtaining a job other than with her old employer because of her handicap. It ignores testimony that Mrs. Schrib has a 70% wage-earning disability.

Seidenberg's claim as to excessiveness of the damage award omits any reference to the following: (1) Mrs. Schrib was hospitalized and underwent at least three surgical procedures in the treatment of the condition resulting from the gangrene; (2) the operative sites healed slowly and required frequent debridement; (3) a wide scar extends the length of her forearm; (4) this scar and the amputation of portions of her left thumb and forefinger are permanent conditions; and, (5) the finding, supported by uncontradicted testimony, of her pain and suffering.

The trial court found that Mrs. Schrib suffered the injuries described above, has permanent loss of functions to her hand and arm and a loss of wage-earning ability. She underwent hospital and surgical treatments, had pain and suffering, incurred medical expenses and lost wages. These findings and the award of $51,200.00 are supported by substantial evidence.

(b) Inadequacy.

Plaintiffs contend the damage award is inadequate. Before the trial court, the only reference to inadequacy of damages is in the argument of plaintiffs' attorney in opposition to Seidenberg's motion for a remittitur. The attorney remarked: " * * * She had lots of suffering, your Honor, and I think the Court's amount was low." Plaintiffs did not, however, ask the trial court to either increase the amount awarded or grant a new trial. See Hammond v. Blackwell, 77 N.M. 209, 421 P.2d 124 (1966). They did not invoke any ruling of the trial court on the asserted inadequacy of damages. Not having invoked a ruling of the trial court as to this issue, they may not raise it here for the first time. Dahl v. Turner (Ct. App.), 458 P.2d 816, decided August 15, 1969.

Further, Hammond v. Blackwell, supra, states that on appeal, a damage award will not be held to be inadequate:

" * * * unless it appears to have resulted from passion, prejudice, partiality, undue influence or some corrupt cause or motive, where there has been palpable error or the measure of damage has been mistaken. * * * "

See Powers v. Campbell, 79 N.M. 302, 442 P.2d 792 (1968).

The measure of damages may be mistaken if the award does not include proven elements of damage. See Hammond v. Blackwell, supra; Jones v. Pollock, 72 N. M. 315, 383 P.2d 271 (1963). Plaintiffs contend the trial court mistook the measure of damages. They reach this contention by taking 70% (the loss of earning capacity) of Mrs. Schrib's gross income for the year prior to the injury and multiplying this figure by the number of years remaining before she reaches age 65. Disregarding the lack of proof as to net wages (prior to injury) and assuming unproven years of work expectancy, plaintiffs use the resulting sum as a portion of the damages awarded. They subtract this sum and the amount of the medical expenses from the damage award and assert the balance of approximately $6,000.00 is all that is awarded for Mrs. Schrib's dis-

figurement and pain and suffering. The claim of mistaken measure of damages is based on plaintiffs' computation of the amount awarded for disfigurement and pain and suffering.

In substance, plaintiffs' claim of inadequacy is based not only on items for which there is no proof, but on their own speculation as to how the trial court arrived at the amount of the damage award. The trial court, after finding the items of damage discussed above, under "excessiveness", made its award for all of the items of damage. It did not allocate its award to specific items of damage.

The record does not support plaintiffs' claim that the trial court's award was inadequate because of a mistaken measure of damages. Accordingly, we do not reach the question of what relief is available on appeal when there is a determination that the damages awarded were inadequate.

■ Both claims—excessiveness and inadequacy—have been presented by comparing awards in other cases. Such comparisons are not a proper basis for determining either excessiveness or inadequacy of damages. The comparisons are improper because the propriety of the amount of the damages awarded must be determined from the evidence in the case under consideration. Sweitzer v. Sanchez, supra.

*Strict liability of the manufacturers of the drug.*

Plaintiffs sued both Seidenberg and Wyeth (Wyeth Laboratories and American Home Products, Inc.). Seidenberg cross-claimed against Wyeth. Plaintiffs dismissed their suit against Wyeth at the close of their case. The trial court dismissed the cross-claim against Wyeth at the close of Seidenberg's case. See § 21–1–1(41) (b), N.M.S.A.1953.

Seidenberg claims the trial court erred in dismissing his cross-claim. He asserts Wyeth is "strictly liable" to Seidenberg. Wyeth asserts the issue of strict liability was not raised in the trial court and therefore is not properly before us on appeal.

The issue was not specifically raised in the cross-claim. It is not at all clear that the cross-claim was tried on a theory of strict liability. See Hutchinson v. Revlon Corporation of California, 256 Cal.App.2d 517, 65 Cal.Rptr. 81 (1967). If so tried, there was no motion to amend the pleadings to conform with the proof. See Conolley v. Bull, 258 Cal.App.2d 183, 65 Cal.Rptr. 689 (1968).

The cross-claim did, however, plead that Wyeth was liable on the basis of negligence and breach of implied warranty. Sweeney v. Matthews, 94 Ill.App.2d 6, 236 N.E.2d 439 (1968) indicates that the pleadings encompass the issue of strict liability when both negligence and breach of implied warranty are pleaded. We do not decide the pleading question; rather, we assume that the issue of strict liability is properly before us.

Although Seidenberg contends Wyeth is strictly liable, he makes no attempt to set forth the conditions under which strict liability will be imposed. Wyeth assumes that Seidenberg would apply Rest.Torts 2d, § 402A (1965). We make the same assumption. Section 402A, supra, states in part:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, * * *."

If this rule applies in New Mexico, a point we do not decide, it applies only if the product is in a defective condition which is unreasonably dangerous to the consumer. Section 402A, supra, comment g. Where the manufacturer has reason to anticipate that a danger may result from a particular use, the manufacturer may be required to give an adequate warning. A product sold without such a warning would be in a defective condition (§ 402A, supra, comment h) and would be unreasonably dangerous (§ 402A, supra, comment j). "* * * [A] product bearing such a warning, which is safe for use if it

is followed, is not in defective condition, nor is it unreasonably dangerous." Comment j, supra.

The issue, in this case, is whether there was an adequate warning. There is no dispute in the record as to the danger of injecting Sparine into an artery. Further, there is no dispute that Wyeth warned of this danger and that Seidenberg knew of this warning. Seidenberg's contention seems to be that Wyeth failed to warn of the danger of intravenous injections—more specifically, that Wyeth failed to warn that an arterial injection might be made while attempting an intravenous injection.

■ This contention is answered by findings of the trial court. It found that Wyeth's direction circular contained information on the composition of the drug, its indications and uses, dosage and administration, precautions, side effects and contraindications. It found that Seidenberg knew that Wyeth " * * * gave adequate precautions for intravenous injection of Sparine." Substantial evidence supports these findings.

■ Although adequate warnings were given in connection with the intended use of Sparine, Seidenberg asserts Wyeth should be liable because the drug was so dangerous that it could not be safe for that intended use. Here, Seidenberg relies on testimony to the effect that Sparine " * * * does even cause trouble being put in a muscle, let alone a vein or artery. * * * "

The Restatement rule recognizes there are some products, especially drugs, which cannot be made safe for their intended and ordinary use. However, " * * * [s]uch a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. * * * " Section 402A, supra, comment k.

Under the facts of this case, *comment k* is not applicable. The trial court found that the Sparine " * * * was chemically pure, free from defect, and fit and safe for intramuscular or intravenous injection

in accordance with Defendant Wyeth Laboratories' direction circular." The evidence supports this finding.

We do not announce a rule concerning strict liability. We hold only that if Wyeth is strictly liable for its manufacture of Sparine, there are no facts in this case on which to apply such liability.

*Denial of requested admissions.*

Plaintiffs submitted six requested admissions to Seidenberg. See § 21–1–1(36)(a), N.M.S.A.1953. Seidenberg admitted one and denied five of the requests under oath. Section 21–1–1(37) (c), N.M.S.A. 1953 states in part:

" * * * if the party requesting the admissions thereafter proves * * * the truth of any such matter of fact, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attortorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made."

Plaintiffs moved for an order requiring Seidenberg to pay them the reasonable expenses incurred in proving the facts covered by the five requests which Seidenberg denied. The trial court denied the motion, but gave no reason under the rule for doing so. By cross-appeal, plaintiffs contend the denial of their motion was error.

■ Compliance with § 21–1–1(37) (c), supra, is mandatory. See Thomason v. Hester Mobile Home Manufacturer, Inc., 235 Ark. 529, 361 S.W.2d 94 (1962); 2A Barron and Holtzoff, Federal Practice and Procedure § 854 (Rules ed. 1961). The trial court must enter an order either requiring payment of the expenses or finding there were good reasons for denying such expenses or finding that the admissions sought were of no substantial importance.

This does not mean that the trial court has no discretion in the matter. " * * *

The 'good reasons' language leaves the matter largely in the discretion of the district court, though a denial of a motion for expenses should be accompanied by findings pursuant to the Rule." 4 Moore, Federal Practice para. 37.02[7], at 2832 (2d ed. 1968); see Melanson Company, Inc. v. Hupp Corp., 391 F.2d 902 (3rd Cir. 1968).

Here, there has been no compliance with the rule. The trial court denied plaintiffs' motion but it did not find there were good reasons for denying the expenses, nor did it find that the five requests which were denied were of no substantial importance. Nor, from the record, can we determine whether the trial court considered that one or more of the requested admissions had not been proved to be true.

Plaintiffs' judgment for damages resulting from malpractice is affirmed. The cause is remanded for compliance with § 21–1–1(37) (c), supra.

It is so ordered.

OMAN and HENDLEY, JJ., concur.