**Robert J. ALFONSO,**
**Plaintiff-Appellant,**

v.

**Dr. John C. LUND, Defendant-Appellee.**

No. 83–1896.

United States Court of Appeals,
Tenth Circuit.

Feb. 10, 1986.

Peggy A. Bowen (Vernon D. Jones, Alamogordo, N.M., was also on brief) for plaintiff-appellant.

Ellen G. Thorne (Rick Beitler of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N.M., was also on brief) for defendant-appellee.

Before HOLLOWAY, Chief Judge, and WILLIAM E. DOYLE * and McKAY, Circuit Judges.

HOLLOWAY, Chief Judge.

The plaintiff-appellant, Robert Alfonso, brought this diversity action alleging that he had suffered permanent disability and disfigurement to his hand due to medical malpractice.[1] After trial to a jury, the district judge directed a verdict in favor of the defendant-appellee, Dr. John Lund. I.R. 26. We affirm.

**I**

**The factual background**

On December 12, 1978, Robert L. Alfonso, 17 years of age, accidentally injured his right hand with a power saw in Alamagordo, New Mexico. The index and middle finger of his dominant right hand were completely severed. The ring finger was lacerated but not completely separated from the hand.

A neighbor drove Alfonso to a nearby hospital in Alamogordo, the Gerald Champion Memorial Hospital. They arrived at approximately 5:40 p.m. The emergency room physician then took the severed fingers and telephoned Dr. Lund, who was the on-call surgeon. At Dr. Lund's instructions, the emergency room doctor administered certain antibiotics and pain medications in preparation for possible surgery. Tr. 73, 74, 81, 87–88.

Alfonso's mother, Elizabeth Becker, arrived a few minutes later. She called her husband and asked him to check on a helicopter to medivac her son to a different hospital. She met with Dr. Lund approximately two hours later. Dr. Lund said that too much time had elapsed for him to reattach the fingers. Instead, he recommended surgical repair of the remaining hand. When Mrs. Becker insisted that her hus-

---

* The Honorable William E. Doyle heard the argument in this appeal but did not participate after December 31, 1985, in this matter.

1. Plaintiff's diversity complaint named as defendants both Dr. Lund and the Gerald Champion Memorial Hospital, to which he was taken for treatment of his injury. Plaintiff dismissed the claim against the hospital at the close of his case in chief and this appeal concerns only his claim against Dr. Lund.

band was checking on a helicopter, Dr. Lund said that transfer to another hospital would be useless because too much time had elapsed since the accident. Tr. 166. Finally, the mother consented to surgery. Tr. 164.

The operation began at approximately 8:00 p.m. Dr. Lund closed the stumps, trimming back the nerves and cleansing the wounds. He decided against recessing the nerve endings, telling the mother that he could do so at a later date. Tr. 37–38, 139. He treated the ring finger by straightening the fracture, repairing a tendon, covering the laceration, and splinting the finger. Tr. 140. After Alfonso's discharge from the hospital, he received follow-up care at Holloman Air Force Base. Tr. 145. The Holloman doctors treated Alfonso with whirlpool therapy, removing the splint from his ring finger.

Plaintiff later moved to New Jersey and consulted Dr. Gregory Rauscher, complaining of pain at the stump sites and restricted motion in his ring finger. At trial the plaintiff introduced Dr. Rauscher's deposition testimony in evidence. Dr. Rauscher disagreed with Dr. Lund's failure to refer the boy to a specialist for reattachment of his fingers. Tr. 298. He also concluded that Dr. Lund's technique in closing the finger stumps and in straightening the fractured ring finger was improper. Tr. 314–317.

Plaintiff's complaint alleged negligence by Dr. Lund in failing to reimplant the severed fingers or alternatively in failing to transfer him to El Paso, Texas, or Albuquerque for reimplantation of the severed fingers and proper treatment, and in failing to treat the hand in accordance with accepted medical standards. I.R. 2. Dr. Lund denied all such negligence at trial. The trial judge granted a directed verdict for the defendant on which judgment was entered against the plaintiff, and this appeal followed.

For reversal, the plaintiff strenuously argues that he made a case on his claims for submission to the jury by the testimony of Dr. Rauscher and the admissions by Dr.

Lund. We turn now to consideration of the arguments advanced on appeal concerning the evidence and the propriety of the directed verdict.

## II

### Admission of Dr. Rauscher's deposition

As noted, the plaintiff's case rested primarily on the deposition testimony of Dr. Rauscher. The defendant argues that the deposition should have been excluded entirely and should not be considered by us because plaintiff's counsel had misled defense counsel by saying the Doctor would appear at trial to testify, and then instead by using his deposition and explaining his absence by representing that he could not attend. Further defendant contends that Dr. Rauscher was not competent to testify with respect to the applicable standard of medical care in Alamagordo, New Mexico. We reject these contentions against consideration of Dr. Rauscher's deposition.

First, the trial judge relied on Federal Rule of Civil Procedure 32(a) in admitting the deposition. The Rule states in part:

> The deposition of a witness ... may be used by any party for any purpose if the court finds ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States unless it appears that the absence of the witness was procured by the party offering the deposition....

Fed.R.Civ.P. 32(a)(3)(B). We do not think that the judge abused his discretion in applying the rule.

The amended pretrial order, signed the second day of trial, states that the plaintiff would call Dr. Rauscher to the stand "[i]n the absence of reasonable notice to opposing counsel to the contrary." I R. 22. The next day, however, plaintiff's counsel announced that Dr. Rauscher would be unable to attend the trial, offering portions of his deposition testimony into evidence. Tr. 184. The trial court, concerned about possible surprise to the defendant, questioned plaintiff's counsel about the reasons for Dr. Rauscher's absence. Tr. 183–87. The

attorney explained that two days earlier, Dr. Rauscher had said that he would attend the trial. The following day, however, he said that he would be unable to do so because "he could not get any other help." Tr. 184. The trial judge called Dr. Rauscher's office and was told that he was out of the country. Tr. 184. The judge concluded that he should admit the deposition testimony, and parts of it were read to the jury. Tr. 185–86, 187.

We note at the outset that the admission of deposition testimony lies within the trial court's discretion. Reversal is appropriate only upon a clear showing that the trial judge abused his discretion. *See Reeg v. Shaughnessy*, 570 F.2d 309, 317 (10th Cir.1978); *Sims Consolidated, Ltd. v. Irrigation and Power Equipment, Inc.*, 518 F.2d 413, 418 (10th Cir.1975), *cert. denied*, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 141 (1975). No such showing of abuse of discretion is made here. Under Rule 32(a), admission of the deposition was proper if Dr. Rauscher was out of the country, unless his absence was procured by the plaintiff. Defense counsel do not dispute the trial judge's implicit finding that the test was satisfied. Instead, they contend that the plaintiff misled them into believing Dr. Rauscher would appear at trial. Appellee's Answer Brief, at 10–12. They nonetheless failed to persuade the trial judge on this theory. We think the trial court was justified in accepting plaintiff's explanation for Dr. Rauscher's absence. *See Hartman v. United States*, 538 F.2d 1336, 1346 (8th Cir.1976); *Ikerd v. Lapworth*, 435 F.2d 197, 205 (7th Cir.1970).

## III

### Sufficiency of the evidence to go to the jury

The principal question before us is whether Dr. Rauscher's deposition testimony was sufficient for submission of plaintiff's malpractice case to the jury. Under New Mexico law liability for medical malpractice requires a showing that the physician departed from recognized standards of medical practice and that such departure was the proximate cause of the injuries which are the subject of the litigation. *Schrib v. Seidenberg*, 80 N.M. 573, 458 P.2d 825, 826 (App.1969).

On appeal plaintiff Alfonso argues that the defendant was negligent in three respects. First, he says that Dr. Lund should have referred the case to a specialist for reimplantation of the two severed fingers, or that he should have reimplanted the fingers himself. Second, he contends that Dr. Lund was negligent in closing the two finger stumps. Third, he argues Dr. Lund was negligent in his treatment of the fractured ring finger. In connection with each claim, plaintiff argues that the defendant's negligence was the proximate cause of his disfigurement and disability. We will consider each claim of negligence separately.

### A.

### Failure to reimplant the two severed fingers

Dr. Rauscher testified that under the proper standard of care, Dr. Lund should have referred plaintiff Alfonso to a specialist for reimplantation of the two severed fingers. Tr. 288–89, 292–93. Defendant argues that the plaintiff's case on the reimplantation theory was defective for two reasons. First, defendant contends that Dr. Rauscher was not competent to testify with respect to the standard of care in the Alamagordo, New Mexico area. Secondly, defendant argues that the plaintiff's evidence did not make out a proper case for submission to the jury on the proximate cause issue in that plaintiff wholly failed to show that there could have been a successful reimplantation, avoiding the disfigurement and disability to plaintiff's hand.

The trial judge rejected the first argument of the defendant, holding that Dr. Rauscher was competent to testify with respect to the standard of care applicable in this case. Defendant renews on appeal his objections to the admissibility of Dr. Rauscher's testimony on the standard of care as a ground for affirmance of the

directed verdict for the defendant. We therefore treat this issue first.

### 1.

### Standard of care

Under New Mexico law, evidence of the standard of knowledge, skill and care owed by a physician can be provided by expert testimony of the knowledge, skill and care ordinarily used by reasonably well-qualified doctors of the same field of medicine practicing under similar circumstances, and this includes testimony from doctors from the same or other localities. *Pharmaseal Laboratories, Inc. v. Goffe,* 90 N.M. 753, 568 P.2d 589, 593–94 (1977). Such testimony was provided by Dr. Rauscher. After arguments at the bench the trial judge stated that the plaintiff had "jumped the hurdle" in this respect and admitted the doctor's testimony. Tr. 217.

 The finding on competency of the doctor to testify was one for determination by the court, Fed.R.Evid. 104(a); this finding should not be reversed unless it was clearly erroneous. *See United States v. Apodaca,* 522 F.2d 568, 571 & n. 3 (10th Cir.1975). We are not persuaded that the finding on the competency of Dr. Rauscher was in error in light of his qualifications and testimony on his familiarity with the care afforded by surgeons in his field in metropolitan and smaller communities, and the modification of the strict locality rule in the *Pharmaseal Laboratories* case. 568 P.2d at 593.[2]

### 2.

### Proximate cause

With respect to plaintiff's claim for damages for disability and disfigurement due to negligence which prevented reimplantation, we feel that a jury question on defendant's negligence was raised. However, the question remains whether plaintiff made a case sufficient for submission to the jury on the proximate cause question. This involves the problem whether the claim for damages for disfigurement and disability was made out by a showing that there was a probability that the plaintiff's fingers could have been reimplanted successfully so that he would have a functioning hand.

The plaintiff's case rested principally on the deposition testimony of Dr. Rauscher. Dr. Rauscher was Director of Reimplantation Surgery at the Hackensack Medical Center in New Jersey and was board certified as a plastic and general surgeon. Plaintiff Alfonso came to him for examination of his hand, which was very swollen. He had a tender ring finger proximal interphalangeal joint, and a painful tender ulnar. The index and middle finger of the right hand were both amputated into the proximal phalanx. Dr. Rauscher first removed the tender nerve, the stump on the right middle finger, and deepened the space between the index and middle finger so that he would be able to pick up objects. Tr. 284–85. A correction of the webbed space deformity on his hand and the nonunion of it was performed in April 1979.

Dr. Rauscher examined Dr. Lund's deposition, Tr. 289, and reviewed medical reports concerning plaintiff Alfonso and X-rays of his injured hand taken at the Gerald Champion Memorial Hospital at the time of injury. Tr. 298–99. These materials gave him information on the condition of the injured hand and the amputation. On the basis of this information, Dr. Rauscher expressed an opinion that Dr. Lund was negligent in the treatment which should have been reimplantation rather than closure. Tr. 299. The plaintiff had

---

**2.** In *Pharmaseal Laboratories,* the New Mexico Supreme Court declared that the first paragraph of New Mexico Uniform Jury Instruction Civ. 8.1 was the correct statement of New Mexico law. This instruction states:

> In (treating) (operating upon) (making a diagnosis of) the plaintiff, the doctor was under the duty to possess and apply the knowl-

edge and to use the skill and care that was ordinarily used by reasonably well qualified doctors of the same field of medicine as that of the defendant practicing under similar circumstances, giving due consideration to the locality involved. A failure to do so would be a form of negligence that is called malpractice.

been brought to the hospital about 5:40 p.m. on December 12, 1978, and Dr. Lund admitted him to the hospital by telephone instructions about 6:00 p.m. Tr. 72. Dr. Lund's surgery in making the closure was performed about 8:00 p.m. that evening. Dr. Rauscher testified that reattachment surgery was possible within about 12 hours, if the detached fingers were given proper treatment and kept cool. Tr. 295.

Dr. Rauscher testified further that there was perhaps a fifteen per cent chance that such reimplantation would not take successfully where reasonably prompt efforts to reimplant the digits were made. This was "the national average." Dr. Rauscher was asked whether they were really talking about possibilities, and he replied that "it's more than possibilities. It's the question of proper diagnosis and evaluation on a patient." Tr. 310. Thus the argument is made that Dr. Rauscher's testimony supported the plaintiff's case sufficiently on the basis of probabilities to go to the jury, giving favorable consideration to his deposition.

We are unable to agree. With respect to the plaintiff's case in particular, Dr. Rauscher felt that Alfonso should have been transferred to Albuquerque or another facility, but *"[w]hether [his fingers] would have been successfully reattached, would have to be conjecture."* Tr. 295–96. (Emphasis added). Dr. Rauscher said that his opinion on reattachment would not really have been changed if Dr. Lund found the tissue badly torn. Tr. 303. When asked whether there could have been successful reimplantation, Dr. Rauscher testified that all that could be said was that reimplantation was possible. Tr. 310. The most important consideration on reimplantation was the blood vessel damage and the "mechanism injury." Tr. 313–14:

Q. So you can't really say then today what the condition of the blood vessels was at the time of amputation, can you?

A. Only conjecture.

Q. Would you agree with me that if the condition was poor, in other words, a lot of damage to those blood vessels, the chances of successful reimplantation would have been diminished?

A. That's right.

On this state of the evidence, the plaintiff failed to make a case for the jury. Under New Mexico law the proof that the disfigurement and disability of the plaintiff was caused by the negligence of the defendant must show probabilities. Proximate cause in such cases rests on probabilities, and such facts must generally be established by expert testimony. *Buchanan v. Downing,* 74 N.M. 423, 394 P.2d 269, 271–72 (1964). In the *Buchanan* case the New Mexico Court refused to apply res ipsa loquitur in a medical malpractice case. While fully appreciating the obstacles facing a plaintiff attempting to prove negligence in a malpractice case, the court declined to follow certain statements in some cases there cited as being "too sweeping and placing too great a burden on a defendant doctor." *Id.* 394 P.2d at 272. The burden of proving with reasonable certainty the causal connection between the treatment complained of and the plaintiff's loss or injury rests on the plaintiff, and a judgment in a malpractice action based on conjecture, surmise or speculation cannot be sustained. *See Woods v. Brumlop,* 71 N.M. 221, 377 P.2d 520, 522–23 (1962).[3]

---

**3.** We have noted *Baca v. Baca,* 81 N.M. 734, 472 P.2d 997 (App.1970). There a wrongful death judgment was upheld against owners of a bar who failed to advise police of blood coming from the area of decedent's ear after a fight, prior to his being jailed. Defendants argued that the proof was defective because the medical evidence failed to establish that defendants' negligence was the cause of death. It is true that the plaintiffs's medical witness in *Baca* merely testified that in his operating on several hundred subdural hematomas, his patients recovered in 90% of the cases, and that had he treated decedent prior to the development of hemorrhaging in the brain stem, his chances for survival would have been "far greater." The New Mexico Court of Appeals nevertheless held the proof sufficient, and that medical testimony in so many words that decedent's life would have been saved had he been operated on sooner was not essential. The court said that its opinion was not inconsistent with *Buchanan* and other cases.

■ We are mindful that conflicts in the testimony of a single witness are for the, jury to resolve, and we have applied this reasoning in a medical malpractice case. *See Poertner v. Swearingen,* 695 F.2d 435, 437 (10th Cir.1982). Nevertheless, we feel that under New Mexico law, a medical malpractice case is defective if, as in *Buchanan,* the expert testimony indicated that negligence as the proximate cause of the injury was only a possibility, not a probability. 394 P.2d at 272. With respect to the plaintiff's effort to establish that his disability and disfigurement were the result of the defendant Doctor's negligence, it was necessary to consider the probability of a successful reimplantation of the severed fingers. When testifying as to this plaintiff's case, Dr. Rauscher conceded that whether the finger "would have been successfully reattached, would have to be conjecture." Tr. 295–96. Therefore with respect to the claim based on the reimplantation theory, the directed verdict was properly granted for the defendant.

In his reply brief, the plaintiff argues that the proof was sufficient under the "lost chance theory" enunciated in § 323(a) of the *Restatement (Second) of Torts,* arguing that defendant denied him the opportunity of a successful reimplantation and citing the 85% success national average. Appellant's Reply Brief at 14–18. This section provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or. things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm....

*Restatement (Second) of Torts* § 323(a) (1964). Under this section, it has been held that a malpractice plaintiff can survive a directed verdict if he establishes an increased likelihood of harm as a result of the defendant's negligence. *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 1286, 1288 (1978). Nonetheless, we do not think the section would be applied in a malpractice case in New Mexico.

The section recognizes a new theory of liability which has not yet been treated by the New Mexico courts. It should therefore first be addressed by the district court. *Poertner v. Swearingen,* 695 F.2d 435, 436 n. 1 (10th Cir.1982). The plaintiff, however, failed to identify this theory in his pleadings or the pretrial order, or in the bench conferences in our record. We would thus be hesitant to reverse on the basis of the plaintiff's belated presentation of the "lost chance" theory in this court.

■ In any event, however, we believe that New Mexico would not apply the "lost chance" theory in a case such as this. The states are in disagreement over the theory. Several states have rejected it as inconsistent with their traditional notions of proximate cause in medical malpractice cases. *See, e.g., Hiser v. Randolph,* 126 Ariz. 608, 617 P.2d 774, 778 (App.1980); *Gooding v. University Hospital Building,* 445 So.2d 1015, 1020 (Fla.1984); *Cooper v. Sisters of Charity,* 27 Ohio St.2d 242, 272 N.E.2d 97, 102 (1971). In a medical malpractice case the Ohio Supreme Court expressed its "trepidations that such a rule would be so loose that it would produce more injustice than justice." *Cooper v. Sisters of Charity,* 272 N.E.2d at 103. It is true that a growing number of states have adopted the theory. *See, e.g., Evers v. Dollinger,* 95 N.J. 399, 471 A.2d 405, 413, 415 (1984) (Difficulties of proof in certain medical malpractice cases justify application of standard of causation more flexible than that used in conventional tort cases); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 1286, 1288 (1978); *Thornton v. CAMC,* 305

There is some similarity in *Baca* to Dr. Rauscher's testimony with respect to the percentages in the national experience. However, as noted, here Dr. Rauscher conceded that he could only say that successful reimplantation was possible, and that the condition of the blood vessels was a matter of conjecture. Tr. 310, 313–14. We feel that the proof in the instant case was defective, despite *Baca.*

S.E.2d 316, 324–25 (W.Va.1983). Nonetheless, we do not believe that the New Mexico courts would be persuaded to apply such a test here.

In malpractice cases the New Mexico courts have remained firm in requiring that proximate cause be shown as a probability. "Proximate cause rests on probabilities." *Buchanan v. Downing*, 394 P.2d at 271 (N.M.1964) (rejecting attempt to apply res ipsa loquitur doctrine in medical malpractice case); *see also First National Bank of Clovis v. Dione, Inc.*, 102 N.M. 548, 698 P.2d 5, 11 (App.1985) (legal malpractice case); *Shrib v. Seidenberg*, 80 N.M. 573, 458 P.2d 825, 827 (1969); *Woods v. Brumlop*, 71 N.M. 221, 377 P.2d 520, 522–23 (1962). Accordingly we cannot accept plaintiff's argument grounded on the lost chance theory.

In sum, the plaintiff failed to make out a proper malpractice case for submission to the jury on the reimplantation theory.[4]

### B.

### The remaining claims

We hold that the trial court also properly removed the other two claims from the jury's consideration. We agree that the evidence was not sufficient for those claims to go to the jury on the issue of negligence.

The first claim is that Dr. Lund closed the two finger stumps in a negligent manner. To support this claim, plaintiff called Dr. Lund as an adverse witness. On direct examination, he testified generally about his decision to repair the hand. On cross-examination, however, he focused on the procedure he had followed in closing the finger stumps. He said that he did not recess the nerve endings in Alfonso's hand, preferring to do so at a "later date." Dr. Lund explained: "The primary object at this particular time was to clean the defect that was present, cover the defect, and make sure that healed properly before anything further was done. It certainly wasn't an elective procedure to deepen any web spaces at this particular time." Tr. 139.

Dr. Rauscher was the only other witness to testify about Dr. Lund's treatment of the finger stumps. He stated that Dr. Lund would have been "wise" to immediately recess the nerve endings. Tr. 317. He said, however, that Dr. Lund had followed a medically accepted procedure in closing the stumps.[5] Even when we view Dr. Rauscher's testimony in the light most favorable to the plaintiff, we conclude that plaintiff did not establish his claim of negligence in connection with the closing of the stumps. *Becker v. Hidalgo*, 89 N.M. 627, 556 P.2d 35, 38 (1978).

---

4. The plaintiff further argues that the trial court erred in excluding certain portions of Dr. Rauscher's deposition testimony relevant to the proximate cause issue. However, the plaintiff did not cause these portions of the deposition to be made part of the record on appeal. As a result, we are unable to evaluate this assignment of error in any meaningful fashion. Fed. R.App.P. 10(b); *see United States v. Brewer*, 630 F.2d 795, 803 (10th Cir.1980) (quoting *United States v. Johnson*, 584 F.2d 148, 156 n. 18 (6th Cir.1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1239, 59 L.Ed.2d 469 (1979); *United States v. Strand*, 617 F.2d 571, 578 (10th Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980); *Herron v. Rozelle*, 480 F.2d 282, 288 (10th Cir.1973). We cannot consider this claim of error.

5. The testimony is as follows:
Q. I understand that there are physicians who take care of these kinds of injuries that do an initial closure to get protective covering over the stubs and then later as the need arises go back and take care of those nerve problems and, at the same time, sometimes deepen the web; is that your understanding?
A. Some do, yes. Some do.
Q. And that would be an accepted approach, wouldn't it, Doctor, in the treatment of these kinds of injuries?
A. It's one way that some people treat them, yes.
Q. Now, I understand you don't treat them that way, do you?
A. Not just myself.
Q. Well, yes, that's what I'm trying to get at, Doctor. There are some who do and there are some that adhere to a slightly different philosophy or method of treatment?
A. Well, it's a difference on matters of opinion on that, yes.
Tr. 317–18.

We think the same is true of the claim involving Dr. Lund's treatment of the fractured ring finger. On direct examination, Dr. Rauscher testified that Dr. Lund should have used a screw or "K wire" in treating the finger. Tr. 314. On cross-examination, however, Dr. Rauscher said that "[t]here is room for leeway" in deciding how to treat broken fingers and "some room for medical judgment in these kinds of cases...." Tr. 315. Again, when we view Dr. Rauscher's testimony in the light most favorable to the plaintiff, we find no substantial basis for a finding that Dr. Lund was negligent in treating the ring finger under New Mexico law.

AFFIRMED.