375 P.2d 327

**Ursinio LUCERO, Claimant, Plaintiff-Appellee,**

v.

**C. R. DAVIS CONTRACTING CO., Employer, and Indemnity Insurance Company of North America, Insurer, Defendants-Appellants.**

No. 6967.

Supreme Court of New Mexico.

Oct. 16, 1962.

McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Albuquerque, for appellants.

Lorenzo A. Chavez, Arturo G. Ortega, Melvin L. Robins, Albuquerque, for appellee.

CASWELL S. NEAL, District Judge.

This is an appeal from an award made by the trial court under the Workmen's Compensation Act (§ 59-10-1 et seq., N.M. S.A., 1953) to claimant Lucero against his employer and insurance carrier.

The case was tried before the court without a jury, resulting in a judgment allowing claimant $825.00 as a lump sum representing 5% disability from the date of the accident to the date of judgment; 5% partial permanent disability until further order of the court; medical bills of $1,054.84, and $325.00 attorney's fee.

The trial court's Finding of Fact No. 2 as follows:

"The Claimant sustained a compensable injury suffered by accident arising out of and in the course of his employment while working for C. R. Davis Contracting Co., on the 8th day of July, 1958."

is challenged by appellants as not sustained by the evidence, in two respects, namely:

1. That the evidence fails to show an "accident" within the meaning of the act, and

2. That the evidence does not show a causal connection between an accident and claimant's resulting disability.

No other question is presented by the appeal.

A review of the evidence, in the light of certain well-established rules of law, is indicated.

In reviewing evidence on appeal, all disputed facts must be resolved in favor of the appellee and all reasonable inferences drawn from the evidence should be indulged in to support the judgment. The evidence must be viewed most favorable to the judgment. Totah Drilling Co. v. Abraham, 64 N.M. 380, 328 P.2d 1083; Martinez v. Archuleta, 64 N.M. 196, 326 P.2d 1082; Waters v. Blocksom, 57 N.M. 368, 258 P.2d 1135.

The Workmen's Compensation Act is remedial in nature; is given a liberal interpretation by both the trial and re-

viewing courts; reasonable doubts must be resolved in favor of the employee; its beneficent purposes may not be thwarted by technical refinement or interpretation; as to such cases liberality of construction as to the weight and sufficiency of the evidence is indulged. White v. Valley Land Co., 64 N.M. 9, 322 P.2d 707; Montell v. Orndorff, 67 N.M. 156, 353 P.2d 680; Valencia v. Stearns Roger Mfg. Co. (D.N. M.1954), 124 F.Supp. 670; Wilson v. Rowan Drilling Co., 55 N.M. 81, 227 P.2d 365; Armijo v. Middle Rio Grande Conservancy District, 59 N.M. 231, 282 P.2d 712.

Turning now to the evidence with reference to whether the claimant sustained an "accident" in the course of his employment.

The undisputed evidence shows that claimant was 39 years of age at the time of the trial, and had quit school in the seventh grade. He engaged in heavy labor cleaning forests, went to the C. C. Camps where he was a truck driver and did heavy labor. He served in the army four years with the Fifth Armoured Division from North Africa to France, Italy and Germany. He had no trouble with his chest or lungs. He then went to a pottery (ceramics) school about a year and nine months. Worked as a rodman for the Highway Department. Worked for a plumbing company doing heavy work such as digging ditches about a year. He then worked two years for a power line contractor digging post holes and dragging a line. He then worked for the City of Albuquerque Water Department, driving a truck, cutting down trees and working on pipe lines. He worked eight years for Allison & Haney Construction, doing heavy construction work. He then went to work for the defendant employer about two weeks before this incident, helping lay pipe, breaking manholes with a sledge hammer and jack hammer. Up to this time he had never had any trouble with his lungs or chest. On the morning of July 8, 1958, he had been laying pipe. In the afternoon he was assigned to the job of sweeping the streets, apparently by hand. A power broom was being used to sweep the streets near by. Claimant testified:

"Q And what was the weather condition that day from the standpoint of dust and sand blowing and things of that nature?

"A Oh, the day was pretty nice but sweeping with that power broom raised a lot of dust.'

"Q Raised a lot of dust?

"A Yes, sir.

"Q Was there a heavy concentration of dust in the air?

"A Yes, a lot of dust.

"Q And what happened when you breathed that heavy dust in the air?

"A Well, I felt like something itching in my chest and then I start coughing blood right away.

"Q You started coughing blood?

"A Yes, sir.

"Q And did you cough a little blood or a lot of blood?

"A No, a lot of blood.

"Q And what did you do then?

"A And then I run to my foreman and he took me down to the Doctor's Hospital."

 This in the court's opinion fully supports the court's finding an "accident" within the meaning of the Workmen's Compensation Act.

The sudden breathing of heavy dust-laden air, caused by the nearby operation of a power broom sweeping the streets, which when taken into his lungs caused a coughing spell and a resulting sudden hemorrhage, is sufficient to establish a "mishap" or "fortuitous happening." It can be said to produce an "unintended," "unexpected," and "unlooked for" result, requiring the court to characterize the event as accidental. Teal v. Potash Company of America, 60 N.M. 409, 292 P.2d 99.

This evidence is sufficient to sustain a finding of accidental injury in the course of employment within many decisions of this court. Christensen v. Dysart, 42 N.M. 107, 76 P.2d 1; Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342; Webb v. New Mexico Pub. Co., 47 N.M. 279, 141 P.2d 333, 148 A.L.R. 1002; Clower v. Grossman, 55 N.M. 546, 237 P.2d 353; Barton v. Skelly Oil Co., 47 N.M. 127, 138 P.2d 263; Henderson v. Texas-New Mexico Pipe Line Co., 46 N.M. 458, 131 P.2d 269; Gilbert v. E. B. Law & Son, Inc., 60 N.M. 101, 287 P.2d 992.

The undisputed evidence in the case shows that the claimant in his early life suffered from tuberculosis resulting in a Ghon tubercle, which is defined as "primary lesion in juvenile pulmonary tuberculosis." Blastick's New Gould Medical Dictionary, 1st ed. "The primary lesion in tuberculosis of the lung in children." Dorland's Medical Dictionary, 23d ed.

 This fact, however, does not preclude claimant from compensation, even though one without such a condition would not have been so adversely affected from breathing a sudden heavy concentration of dust. The aggravation by accident of a pre-existing condition, whether the result of a disease or a congenital weakness, is nevertheless compensable. Christensen v. Dysart, supra; Elsea v. Broome Furniture Co., 47 N.M. 356, 143 P.2d 572; Gilbert v. E. B. Law & Son, Inc., supra; Seay v. Lea County Sand and Gravel Co., 60 N.M. 399, 292 P.2d 93; Reynolds v. Ruidoso Racing Association, Inc., 69 N.M. 248, 365 P.2d 671.

When claimant was admitted to the hospital he was given a bronchoscopy, which is an insertion, under local anesthesia, of a lighted tube for the internal examination of the windpipe and major branches. The doctor found a little clot of blood in the right lower lobe, bronchial tube, and some blood issuing from the right middle lobe. Sputum was taken for microscopic examination and he was discharged about 4 p. m. with antibotics after the streaking of blood stopped. He was readmitted to the hospital in a few days because the pathologist reported the sputum contained cells which were felt to be characteristic of cancer. A bronchogram was performed, which is a dilation of the bronchial tubes, which was interpreted as indicating a possible tubular bronchiectasis, which is a spindley dilation of some of the tube in the right lobe of the lung, and a Ghon tubercle by the right hilus. A Ghon tubercle was described by the doctor as a healed scar caused by childhood tuberculosis. On July 28th a right thoractomy was performed and a mass compatible with a Ghon tubercle was removed from the rear of the left lobe without requiring suture of the lung tissue. It could be removed without producing significant bleeding. The remaining areas were checked without encountering probable pathology. The operation was performed expecting a malignant tumor, which was not found. The operation was performed as a calculated risk, and deemed necessary under the circumstances. The incision was made from the back. The claimant had had no previous bleeding prior to the hemorrhage on July 8th, although he had had some pain in the right armpit and stomach when he had worked shortly before with a pneumatic drill.

The doctor testified:

"Q And in view of the history, is it your opinion that excluding other possibilities, which are mere possibilities, that this was or was very well the triggering factor that led to the spitting of blood?

"A Well, any irritant causing or making worse acute bronchitis could cause the spitting of blood.

"Q Well, in view of the history in this case, doctor, the incidence of having breathed heavy dust, is that the thing that you point to in this case as the triggering factor?

"A Well, I think it is very important to state that in any of these cases one has no way of saying what was the actual cause. One can only say what could well be a cause.

\* \* \* \* \* \*

"Q And that this mass scarring contracture or focal mass or emphysema was prior, was an old condition and it was prior to his employment with C. R. Davis on May 8th, 1958, some sixty days earlier.

"A Yes. I have never seen a lesion of this character where the antecedent x-rays were available and where the antecedent x-rays failed to show it present for at least a year.

"Q Yes. Well, now, doctor, this history of pain in the chest, pain in the stomach and then finally the spitting of blood, could that have happened to the gentleman while he was laying in bed at home?

"A I do presume so.

"Q And it could have happened— if I may ask the direct question, it was the invariable consequence of the disease that he was suffering with, the ultimate spitting of the bood?

"A I can't go all the way on that, it is true that such scars are not uncommon because of blood spitting. It is also true that many individuals, including myself, carry a Ghon tubercle and have never spit blood and do not expect to.

 * * * * * *

"A * * * [reading] 'The patient feels he has felt short of breath for a week, has been working with a pneumatic drill and complains of sharp pain under the right axilla, that is the armpit, and epigastric high abdominal tightness and pain for a month. This pain is relieved during non-working hours.' He states that he sweats heavily at night and has done so for thirteen years. He has not had a chronic cough or orthopnea, orthopnea is a shortness of breath, pain in chest, heavy production of mucus or any previous bouts of blood spitting.

 * * * * * *

"Q The Ghon tubercle in itself was not caused by dust or trauma and pre-existed his employment by C. R. Davis, yet is it your opinion that the heavy inhalation of dust provides a causal connection between the dust and the aggravation of this pre-existent condition which caused him to spit up blood?

"A Only with the addition of the word might, I think I could prove that it might have done this and unfortunately I think that it would be next to impossible to establish statistically the degree of probability.

"Q Yes, beyond a—you can't state that by absolute certainty but you have to deal with the history that you have, is that right?

"A That is right, I can only state that they—

"MR. McATEE: If the Court please, we object on the ground it is reasonable medical certainty as defined by the Supreme Court and not absolute certainty.

"THE COURT: That is right.

"MR. McATEE: We ask that the question be rephrased.

"THE COURT: Very well.

"MR. ORTEGA: Let me ask it of you this way: You do find a causal connection between the inhalation of dust and the spitting up of blood as a result of an aggravation of a pre-existing condition? As I recall you told me in your office that it could very well have been the triggering factor.

"A Well, yes.

"MR. McATEE: Just a second, doctor. We object as to what Dr. Mac-Quigg told in his office and ask that the question be stricken.

"THE COURT: The last part of that question will be stricken.

"MR. ORTEGA: May I just state when there is an objection, please don't try to answer the question until the Court has ruled whether or not you may answer it. The last part of that question with respect to what you told me in your office will be stricken. Let me ask it of you this way: Could it very well have been the triggering factor that aggravated the pre-existent condition, doctor?

"MR. McATEE: Just a second, doctor. We object again on the ground that the Supreme Court has stated the word is reasonable medical certainty.

"THE COURT: Add the words in there, with reasonable medical certainty.

"MR. ORTEGA: With reasonable medical certainty, not absolute but reasonable, in view of the history?

"A To answer your question, I will state that with reasonable medical certainty the inhalation of dust could have been a triggering mechanism in causing blood spitting in this case and the degree of probability that such was the actual cause I cannot state.

"Q In your mind you see a causal connection, however?

"A A possible causal connection definitely.

"Q With reasonable medical certainty?

"A Yes.

* * * * * *

"MR. ORTEGA: In view of Mr. McAtee's inquiry as to the other possible causes I wanted to know if this was the more likely cause.

"A Than any other one cause?

"Q Yes.

"A As a triggering mechanism?

"Q Yes, than any other one cause.

"A Well, if the dust exposure was intense then it could, I think, under these circumstances be a more likely

triggering mechanism than any other one of the many causes."

It is significant that in the employer's report to the insurance carrier it reported "possible dust" as the thing causing injury.

█ This evidence, taken in consideration with the fact that all through a life of heavy work the claimant, though suffering from tuberculosis in infancy resulting in a scarred lung, had never before hemorrhaged, and for the first time did so while coughing as the result of suddenly breathing heavy dust hereinabove described, provides an ample evidence to sustain a causal connection between the accident and claimant's disability.

In White v. Valley Land Co., supra, we said:

"Though no positive statement can now be made as to the causal connection by the medical witnesses, the court was correct in sending the case to the jury on the basis of the medical testimony, such as it was, and the lay testimony as to the events surrounding the accident both before and after it happened. It was for jury determination as to whether there was a natural sequence of events which indicate a causal connection. Whether there is enough evidence to have the jury make this determination in the first instance is a question for the court to determine in the face of the motion to dismiss made by the defendant. Since it appears that there was such evidence this Court must sustain the lower court in leaving the determination of fact to the jury."

In Teal v. Potash Company of America, supra, we said:

"True enough, the expert testimony of the medical witnesses did not go so far as to affirm that a heart attack was the cause of death and, if so, that it likely or probably resulted from the strain and exhaustion which decedent had just experienced, as outlined in the testimony. The most such witnesses were willing to say was that the sudden collapse and death of a man under the conditions shown who, until that time had enjoyed good health and had never before experienced vascular coronary trouble, might very well be attributed to such an attack then. These witnesses were frank enough to agree, however, that death under such circumstances could be attributed to other causes, or might follow when one was engaged in no activity whatever."

The latest case in which we have considered proof of causal connection between the accident and injury is the case of Salazar v. County of Bernalillo, 69 N.M. 464, 368 P.2d 141. In that case we said:

"Appellants assert that 'no one testified that but for the work that Salazar was doing the stroke would not have occurred when it did.' A medical expert is not bound to rest his findings upon positive evidence."

In Alspaugh v. Mountain States Mutual Casualty Company, 66 N.M. 126, 343 P.2d 697, relied upon by appellants, we held that a causal relationship must be established between the accident and injury, and between the injury and death. No different rule is applied to this case. The evidence in this case, with the reasonable inferences to be drawn therefrom, was far above surmise or speculation. In the Alspaugh case three months elapsed between deceased's second heart attack and his death. There was not the most remote medical evidence of the slightest causal connection. Here, claimant's hemorrhage followed the instant he breathed the dust-laden air, and his disability followed the hemorrhage. No relief can be gained by appellant from the Alspaugh case. The rule there announced is inapplicable to the facts in the case now before the court.

Aranbula v. Banner Min. Co., 49 N.M. 253, 161 P.2d 867, cited by appellants, has no application here. There the court simply held that silicosis, developed through many years of breathing mine dust, was an occupational disease and not within the terms of the Workmen's Compensation Act.

The authorities from other jurisdictions are all distinguishable from the case at bar. We do not deem it necessary to review them. We have ample authority in decisions of this court requiring us to sustain the decision of the court below.

The judgment below is affirmed. Attorney's fees in this court in the sum of $750.00 are allowed.

COMPTON, C. J., and MOISE, J., concur.