466 P.2d 879

Fawn H. MAYFIELD, Plaintiff-Appellant,

v.

KEETH GAS COMPANY, Inc., Employer and Pan American Fire & Casualty Company, Insurer, Defendants-Appellees.

No. 411.

Court of Appeals of New Mexico.

March 6, 1970.

Merrill L. Norton, Lovington, for appellant.

N. Randolph Reese, Hobbs, for appellees.

## OPINION

WOOD, Judge.

In this Workmen's Compensation case, the employee suffered an on-the-job injury. He died some months later. The evidence before the trial court conflicted as to the causal connection between the accident and death. It was for the trial court to resolve the disagreement. Gallegos v. Kennedy, 79 N.M. 590, 446 P.2d 642 (1968); Torres v. Kennecott Copper Corporation, 76 N.M. 623, 417 P.2d 435 (1966). The trial court did so, finding that neither the accidental injury, the subsequent surgical and medical care, nor the employee's job and occupation caused, or contributed in any degree to cause, the employee's death. The widow appeals, contending the "only substantial evidence" is that, as a medical probability, death resulted from the compensable injury. In presenting this contention she raises issues concerning: (1) the burden of proof; (2) whether defendants' medical evidence was substantial and (3) aggravation of a pre-existing condition.

The accidental injury occurred in May. It consisted of a fracture in the right knee and depression of the outside area of the tibia. Corrective surgery was performed. There was difficulty in getting the employee to perform post-surgery exercises and in making physiotherapy available to him. To help with these problems his hospital stay was extended, lasting fifty-four days. In addition, he was an inpatient at a medical center for nineteen days. Thereafter he was cared for through office visits to his treating physician. Recovery of use of the right knee was extremely slow, but there was progress.

Although still under his physician's care the employee was permitted to return to his work as a truck driver. He resumed his work on November 21st. He was found dead, on the employer's premises, on December 1st, having died sometime after making two deliveries of gas the previous night.

*Burden of proof.*

The widow's primary theory of causation is that her husband developed a circulatory problem due to the inactivity of the right extremity following the accident, that as a result of this circulatory problem an embolism developed in the right leg and that death resulted from a pulmonary embolism.

The widow introduced evidence, through an expert medical witness, in support of her theory. Her expert's testimony, if uncontradicted, was sufficient to meet the causation requirement of § 59–10–13.3, N.M.S.A. 1953 (Repl. Vol. 9, pt. 1).

Having introduced this testimony, the widow asserts the burden of proof shifted to the defendants. She does not attempt to define "burden of proof." If she means the "burden of producing evidence" shifted to the defendants, she is correct. If there had been no other medical evidence as to causation other than that of plaintiff's expert, a finding of causation would have been required under Ross v. Sayers Well Servicing Company, 76 N.M. 321, 414 P.2d 679 (1966). To avoid such a finding, defendants necessarily had to produce evidence which conflicted with that of plaintiff's expert. The defendants did so.

The burden of proof also refers to the "burden of persuasion." The widow seems to contend that after she presented expert medical testimony as to the cause of death, the defendants had the burden of persuading the trial court that death did not result from a pulmonary embolism. Or, she may be claiming that after she presented her expert medical testimony, the defendants had the burden of persuading the trial court as to what did cause her husband's death. Whatever her contention concerning the burden of persuasion, it is without merit.

Section 59–10–13.3(B), supra, states that where, as here, the causal connection is denied, " * * * the workman must establish that causal connection * * *." The statute places the burden of persuasion upon the widow. The statute did not shift the burden of persuasion once she introduced evidence which would have supported a finding in her favor. Even after the introduction of conflicting evidence, it remained her burden " * * * to convince the trial court of such causal connection as a medical probability. * * *" Torres v. Kennecott Copper Corporation, supra. See also, Gallegos v. Kennedy, supra; Michael v. Bauman, 76 N.M. 225, 413 P.2d 888 (1966). Defendants did not fail to meet a burden of persuasion because they had no such burden to meet.

*Whether defendants' medical evidence was substantial.*

Three medical witnesses testified there was no connection between the employee's accident and his death. The widow contends none of this testimony amounted to substantive evidence. If this view is correct, defendants have not produced evidence conflicting with that of plaintiff's expert and she is entitled to a reversal.

The widow's claim is based on Landers v. Atchison, Topeka & Santa Fe Railway Co., 68 N.M. 130, 359 P.2d 522 (1961). There, the expert's answer to a hypothetical question should not have been permitted because the expert used certain factors " * * * which were either erroneous or about which he [the expert] had no accurate knowledge or information, * * *" See City of Albuquerque v. Chapman, 76 N.M. 162, 413 P.2d 204 (1966); Dahl v. Turner, 80 N.M. 564, 458 P.2d 816 (Ct.App. 1969).

The widow contends the answers of no causation, given by the three medical witnesses, should not have been admitted. She asserts each of these witnesses based his answer on erroneous factors.

One of these three witnesses was Dr. Clark. He gave his opinion on the basis of the same hypothetical question answered by the widow's expert. Dr. Clark was of the opinion that death from a pulmonary embolism was a possibility, but not a probability. See § 59–10–13.3(B), supra. He gave reasons for his opinion. See Dahl v. Turner, supra. According to Dr. Clark the incidence of pulmonary embolism is high following an injury but decreases the farther you get away from it. Thus, to him, the lapse of time between injury and death (over six months) was significant. Further, " * * * [t]his man had been active and walking for at least ten days before his death, which again decreases the likelihood of this [pulmonary embolism]. * * *" As a third reason, Dr. Clark pointed out that the employee's treating physician was a good doctor, and aware of

**316**

"this possibility [an embolism]," that the treating physician would be looking for it and Dr. Clark found nothing in the treating physician's records concerning phlebitis.

After giving his reasons concerning pulmonary embolism, Dr. Clark stated: " \* \* \* So, we are left with the most common cause and the man dying suddenly and this is coronary thrombosis. \* \* \*" Dr. Clark's opinion as to the cause of death is characterized as "speculative"; it is asserted that his opinion is not substantial evidence. For two reasons, this attack is without merit.

First, even if Dr. Clark's opinion as to cause of death is speculative, no benefit results to the widow. It makes no difference if Dr. Clark's testimony as to cause of death lacks substantiality. Defendants were not required to persuade the trial court as to the cause of death. The widow had the burden of persuading the trial court as to causation. Her theory is that death resulted from a pulmonary embolism. Dr. Clark's testimony raises a conflict in regard to the widow's theory of death. No claim is made that Dr. Clark's reasons are not substantial evidence that death from a pulmonary embolism was no more than a possibility.

Second, Dr. Clark's opinion as to cause of death is not speculative but is substantial evidence. The widow asserts that an examination of Dr. Clark's testimony " \* \* \* \* reveals that his opinion is not based on the analysis of the hypothetical question. \* \* \*" This is incorrect. Dr. Clark based his opinion of "no causal relation" upon the facts in the hypothetical question. A reading of his entire testimony reveals that his opinion of death from a heart attack is based on those facts and his experience as to the most likely cause of death under those facts.

The widow also contends that Dr. Clark's opinion as to cause of death is based on " \* \* \* statistical frequencies, i. e., statistical deductive conclusion founded on the proponent's opinion of others' opinions. \* \* \*" This argument is based on the

following questions to and answers by Dr. Clark.

"Q Getting back to your position, you don't have the facts in this case, so you are relying on statistics? Isn't that your position?

"A My position is that no one performed an autopsy so we don't know what this man died of. And, on the basis of what I can read and what I can think, as I say, that is what I use my mind for. I think the most likely thing is a heart attack.

"Q And, Statistics enters a great portion of your thinking, is it not?

"A I try to be logical. This entails using statistics when you try to be logical. That is what you are doing, weighing probabilities, weighing statistics. I think this is what logic is and I am trying to be logical for you."

Dr. Clark did consider statistics in arriving at his opinion as to cause of death. But what statistics? That coronary arteriosclerosis accounts for at least sixty to eighty percent of the sudden cardiac deaths. This is the "common cause" to which Dr. Clark referred after ruling out death from a pulmonary embolism. According to the widow's expert, this percentage figure " \* \* \* is a well known fact and need not be established. \* \* \*" This testimony is evidence that the statistical figure is not speculative. We cannot hold as a matter of law that in considering the statistical figure, Dr. Clark considered an erroneous factor because there is nothing in the record indicating the use of the statistical figure was erroneous. Dahl v. Turner, supra; compare Landers v. Atchison, Topeka & Santa Fe Railway Co., supra.

The widow also attacks Dr. Clark's testimony on the basis that the doctor agreed his testimony was based on speculation. This is a misreading of the record. He testified that he had spent his lifetime figuring out the most likely cause of death but could not say why a heart attack occurs. The doctor's speculation was to the "why"

of a heart attack, not that a heart attack had occurred.

Since Dr. Clark's testimony was substantial and conflicted with the testimony of the widow's expert, we need not consider the attacks on the other two witnesses.

*Aggravation of a pre-existing condition.*

The widow's secondary theory of causation is based on Dr. Clark's testimony. At the time of his accident in May, the employee had arteriosclerosis and was considered obese by medical standards. Arteriosclerosis and obesity make a person "more cardiac." There is evidence that fifteen days after the accident the employee had gained twenty-five pounds; that he had a total weight gain of thirty-five to forty pounds between the accident and his death. Dr. Clark testified as a medical probability that this additional weight, "to some degree," contributed to or precipitated the heart attack from which, in Dr. Clark's opinion, the employee died.

■ The widow contends the foregoing is evidence that the weight gain between the accident and death aggravated a pre-existing condition. We agree, but what caused the weight gain? The doctor testified that a person gains weight because the intake of calories is greater than the amount of calories used. The doctor also testified there were many variables; that he didn't have sufficient facts on which to relate the weight gain in this case either to the accident or the subsequent immobilization of the employee. The doctor testified he didn't know why the employee gained the additional weight. Specifically, the doctor refused to connect the weight gain to the accident or the treatment; his testimony is not evidence that the weight gain was caused by the accident or by the ensuing treatment.

The widow asserts that evidence connecting the weight gain to the accident or treatment is not required. She claims she has proved an aggravation of a pre-existing condition by a combination of two items. One is Dr. Clark's testimony that, as a medical probability, the weight gain contributed to the heart attack. Two is the fact that the weight gain did occur after the accident and during the treatment. She relies on Lucero v. C. R. Davis Contracting Co., 71 N.M. 11, 375 P.2d 327 (1962). In that case the employee began spitting blood after suddenly breathing dust laden air. There was an aggravation of a pre-existing lung condition. *Lucero* held that a causal connection had been established between the accident and the disability.

*Lucero,* supra, is distinguishable on three grounds. First, the medical testimony in Lucero was that, under the circumstances of the case, the breathing of the dust laden air was " ' * * * a more likely triggering mechanism than any other one of the many causes.' " There is no comparable testimony in this case. Second, Lucero's accident occurred in 1958. Section 59–10–13.3(B), supra, with its requirement that causal connection be established as a medical probability, was enacted in 1959. Section 59–10–13.3(B), supra, did not apply to the Lucero decision. Third, the Lucero statement, of " * * * liberality of construction as to the weight and sufficiency of the evidence * * * ", was overruled in Mascarenas v. Kennedy, 74 N.M. 665, 397 P.2d 312 (1964).

■ Because the widow failed to prove by expert medical testimony that the weight gain was caused or resulted from the employee's accident and treatment, she failed to prove that the accident or treatment aggravated a pre-existing condition. Section 59–10–13.3(B), supra.

The judgment denying compensation is affirmed.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.