486 P.2d 75

Thomas CHAFFINS, Plaintiff-Appellant,

v.

JELCO INCORPORATED, a corporation, and Industrial Indemnity Insurance Company, Defendants-Appellees.

No. 538.

Court of Appeals of New Mexico.

April 30, 1971.

Rehearing Denied May 25, 1971.

Writ of Certiorari Issued June 18, 1971.

William F. Aldridge, Horton & Aldridge, Quincy D. Adams, Adams & Foley, Albuquerque (on rehearing), for plaintiff-appellant.

Ray H. Rodey, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for defendants-appellees.

OPINION

HENDLEY, Judge.

Plaintiff filed suit to set aside a general release of a workmen's compensation claim on the grounds of a latent injury. The trial court ruled against plaintiff and he appeals.

We affirm.

Plaintiff fell from a 30 foot power pole on July 8, 1968 and subsequently was treated by Drs. Jordan, Annala, Martinez and Bronitsky. Plaintiff's complaint was of pain and discomfort in his back. Sixteen years prior to plaintiff's fall from the power pole, he was injured in an auto accident and part of the iliac bone was removed leaving a very large scar on his back. Plaintiff signed a release on May 16, 1969 covering future workmen's compensation payments. Dr. Bronitsky saw plaintiff on July 1, 1969 at which time there was a swelling in the scar area and a drainage starting in the scar. The sinus was excised and the wound healed.

Dr. Bronitsky stated that at the time of his medical examinations prior to plaintiff's signing the general release, he could see nothing unusual about the scar and when he discharged plaintiff just prior to plaintiff's signing the release, although plaintiff was complaining of pain in the back, he assumed it was a residual of plaintiff's sprain in the fall from the pole and explained to plaintiff that he eventually expected the pain to disappear completely. Dr. Bronitsky testified that as a medical probability the draining sinus was caused by the fall from the power pole.

Defendants' doctor, Dr. Martinez examined plaintiff on November 5, 1969 and concluded:

"* * * I am at a loss to be able to relate the draining and infected sinus with an injury which occurred many months before. I would rather speculate that the best probability is that there is some connection between the infection and the old scarred area. The ideology

[etiology] may even be independent of either of these two events. However, the least likely possibility, in my opinion, is that the fall from the pole was in any way related to this lesion. * * *"

Plaintiff challenges the trial court's findings nos. 8 and 9 which read:

"8. The occurrence of the draining sinus suffered by the plaintiff on or about July 1, 1969, and the contention that his disability was now increased is merely a claim that the injury proved more serious than at the time of the settlement than [sic] the plaintiff thought them to be, which fact was admitted by Dr. Bronitsky and any mistake about the plaintiff's physical condition at the time he settled was unilateral on the part of the plaintiff and only as to his future disability.

"9. When plaintiff filed suit to set aside the release herein on August 15, 1969, he had simply experienced a worsening of his low back condition as a consequence of an area of earlier injury in his back and more than likely the draining sinus is completely unrelated to his injury of July 8, 1968."

Plaintiff contends the trial court should have adopted his findings which were "* * * to the effect that the draining sinus condition did not manifest itself prior to the settlement; that the draining sinus condition was caused by the accident, [fall from the power pole] and that the condition was not diagnosed by the doctors who treated Plaintiff, prior to the settlement."

Latent injuries are recognized under § 59–10–13.3(A) (3), N.M.S.A.1953 (Repl. Vol. 9, pt. 1). Linton v. Mauer-Neuer Meat Packers, 71 N.M. 305, 378 P.2d 126 (1963). Where causation is denied the workman must establish that causal connection is a medical probability by expert medical testimony. Section 59–10–13.3 (B), N.M.S.A.1953 (Repl.Vol. 9, pt. 1). Where two medical experts express contrary opinions on causation a conflict arises and such conflict must be resolved by the trier of facts. Gallegos v. Kennedy,

79 N.M. 590, 446 P.2d 642 (1968). If there is substantial evidence to support the verdict the findings will not be disturbed. Adams v. Loffland Brothers Drilling Company, 82 N.M. 72, 475 P.2d 466 (Ct.App. 1970).

Viewing the evidence, together with all reasonable inferences that flow therefrom, we conclude there is substantial evidence to support the findings that the draining sinus was unrelated to the fall from the power pole. Here we have two doctors who testified to contrary conclusions. The court believed Dr. Martinez.

Affirmed.

It is so ordered.

SPIESS, C. J., concurs.

DEE C. BLYTHE, District Judge (dissenting).

I am compelled to dissent, for five reasons: (1) Dr. Martinez' report does not furnish a sufficient basis for a finding of lack of causal connection; (2) the trial court did not make a clear-cut finding on causation; (3) the trial court's findings were not separately numbered and stated; (4) the trial court did not mark plaintiff's requested findings of fact and conclusions of law "refused", or enter an order to this effect; and (5) it is apparent that the trial court based its decision, not on lack of causation, but on an erroneous belief that the general release necessarily covered a later-discovered injury in the same body area.

Under Mayfield v. Keeth Gas Company, 81 N.M. 313, 466 P.2d 879 (Ct.App.1970), the defendants' medical evidence on causation in a workmen's compensation case must be substantial, even though it need not meet the plaintiff's statutory burden, where causation is denied, to "* * * establish that causal connection as a medical probability by expert medical testimony." § 59–10–13.3(B), N.M.S.A.1953. (Repl. Vol. 9, Part 1). Is the defendants' medical evidence substantial in this case? The portion of Dr. Martinez' report quoted in

the majority opinion shows that, at best, it was sufficient to raise some questions, using such expressions as "I am at a loss" and "I would rather speculate." It takes a lot of inference to convert this into an opinion of lack of causation. Further, the quoted portion is inconsistent within itself and is actually consistent with plaintiff's contention where it says, "I would rather speculate that the best probability is that there is some connection between the infection and the old scarred area."

This is not a case in which the trial judge saw and heard two medical experts give conflicting opinions. Dr. Bronitsky testified in person for the plaintiff, and as the majority opinion concedes, his testimony on causation met the statutory requirement. Dr. Martinez did not testify in person; his written report was read into evidence by stipulation, and therein lies one source of our problem. Had he been testifying in person, his opinion no doubt would have been elicited, and it might very well have been as interpolated by the majority. But it should not be the function of this court to remedy the deficiency. Since no question of "eyeballing" the witness to determine his credibility is involved, we are in as good a position as the trial court to evaluate the written evidence. Baker v. Shufflebarger & Associates, Inc., 78 N.M. 642, 436 P.2d 502 (1968).

The plaintiff requested a finding "That the draining sinus condition was caused by and directly related to the accident of July 8, 1968." Instead of meeting this request squarely, the trial court's Finding No. 9, as quoted in the majority opinion, states in part that " * * * more than likely the draining sinus is completely unrelated to his injury of July 8, 1968." The trial court, when requested, must find one way or the other on a material fact issue, and failure to do so constitutes error. Aguayo v. Village of Chama, 79 N.M. 729, 449 P. 2d 331 (1969). While there is a line of New Hampshire cases holding that a finding of a probability that a certain fact exists is equivalent to a finding that it does

exist, e. g., Pulsifer v. Walker, 85 N.H. 434, 159 A. 426, 81 A.L.R. 1052 (1932), the precise question has not been decided in this jurisdiction. Under the majority opinion a "more than likely" finding meets the minimum requirements of Rule 52(B), Rules of Civil Procedure, § 21–1–1(52) (B), N.M.S.A.1953 (Repl.Vol. 4), that " * * * the court shall find the facts. * * * pertinent to the case * * *" The same rule goes on to require in two places that each finding and conclusion be separately stated, which definitely was not done in this case. The wisdom of this requirement is well illustrated here; if each fact and conclusion "pertinent to the case" had been stated and numbered separately, we would know much more precisely what was intended, and the true basis of the decision. As it was, the trial court simply adopted verbatim the defendants' requested findings and conclusions, which leave a lot to be desired.

Subsection (B) (a) (5) of the same Rule 52 requires that the trial court mark "Refused" all requested findings of fact and conclusions of law not included in the court's decision. Our Supreme Court has held this rule to be sufficiently complied with where "Refused" was written and initialled on the first page of a party's requested findings and conclusions, Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1965), and where the trial court merely included in its decision an order that "All requested Findings of Fact and Conclusions of Law submitted by the parties at variance with this Decision are hereby denied", Edwards v. Peterson, 61 N.M. 104, 295 P.2d 858 (1956); but in each case the exception was approved on the ground that no prejudice to the appellant had been shown. Here the trial court made no attempt to comply with Rule 52(B) (a) (5) and prejudice did result to the plaintiff because the trial court did not adopt clear-cut findings and conclusions contrary to those requested by plaintiff on material issues, and because the basis of the decision is in doubt. For this reason

alone, the case should be remanded. Otherwise, Rule 52(B) (a) (5) will be nullified in effect, at least in this court, and Edwards v. Peterson and Martinez v. Research Park, Inc., supra, will be impliedly overruled.

Since the true basis of the decision is somewhat obscure, I think it is proper to resort to the trial judge's oral comments at the conclusion of the trial, even though these comments are not binding and may be superseded by the written decision. Edwards v. Peterson, supra. They are, in full:

"THE COURT: I will have to dismiss this case. I think the release was a valid release and releases the claim in question."

This comment is consistent with the decision, which included detailed findings and conclusions about the validity and binding effect of the general release. In fact, four of the conclusions of law are concerned with the release, and only one, the last, is concerned with the injury now complained of. It does say, "The claim of plaintiff does not constitute a latent injury." However, this conclusion is not supported by any findings of fact, even though plaintiff submitted specific requested findings regarding whether the draining sinus had manifested itself or was known by either party to exist at the time of the settlement. A conclusion of law unsupported by specific findings of fact should be disregarded. Consolidated Placers, Inc. v. Grant, 48 N.M. 340, 151 P.2d 48 (1944).

It is apparent that the trial court felt itself bound by the release in view of the fact that the claimed latent injury was in the same general body area (the low back) as the injury which was known to the parties when they settled. As acknowledged by the majority opinion, our law recognizes latent injuries in workmen's compensation cases, and general releases can be set aside where they exist. If the trial court were fully alerted to this, and the case were remanded for further findings and conclusions, the result might well be different. Whether or not the result might be changed, the workman is entitled to that chance. He has put his settlement of $3500 (plus medical bills) on the line by asking that the release be set aside; he might receive less for both injuries on remand.

We are supposed to construe the Workmen's Compensation Act in favor of the workman. Croner v. J. W. Jones Construction Company, 79 N.M. 179, 441 P.2d 219 (Ct.App., 1968). The majority opinion does not do this.

In my opinion, this court should hold the defendants' medical evidence insufficient as a matter of law to overcome the plaintiff's prima facie case on causation, or at least should remand for further findings on causation and latent injury. The majority holding otherwise, I must respectfully dissent.