577 P.2d 431

**Roberto M. TRUJILLO,**
**Plaintiff-Appellee,**

v.

**BEATY ELECTRIC COMPANY, INC.,**
**and the Hartford Insurance Company,**
**Inc., Defendants-Appellants.**

**No. 3050.**

Court of Appeals of New Mexico.

Feb. 21, 1978.

Rehearing Denied March 6, 1978.

Eugene E. Klecan, Klecan & Roach, P. A., Albuquerque, for defendants-appellants.

James C. Thompson, Espanola, Pedro G. Rael, Zamora, Rael & Weinreb, P. A., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

The defendants appeal a judgment awarding the plaintiff total and permanent disability under the New Mexico Workmen's Compensation Act, § 59–10–1, et seq., N.M.S.A. 1953 (2d Repl. Vol. 9, pt. 1, 1974). The plaintiff cross-appeals the court's judgment denying certain medical expenses, costs, interest, and vocational rehabilitation services. We affirm the trial court's judgment of total and permanent disability, and the court's denial of three of plaintiff's claims. We reverse the trial court's judgment on plaintiff's two remaining claims. The points of the defendants' appeal and the plaintiff's cross-appeal will be discussed *seriatim*.

*Defendants' Point I*

The defendants argue that the judgment is in error because of the plaintiff's failure to comply with the mandatory requisites of the Workmen's Compensation Act, § 59–10–13.3(B), N.M.S.A. 1953 (2d Repl. Vol. 9, pt. 1, 1974).

The defendants argue that none of the doctors specifically mentioned the word "disability" using instead "injury" or "accident".

■ By not using the term "disability" as the term to which a causal connection is sought under the statute, defendants contend that the statutory requirements of § 59–10–13.3(B), supra, have not been fulfilled. We disagree with the defendants. As the New Mexico Supreme Court held in *Gammon v. Ebasco Corporation*, 74 N.M. 789, 399 P.2d 279 (1965):

"[T]he medical expert need not state his opinion in positive, dogmatic language or in the exact language of the statute. But he must testify in language the sense of which reasonably connotes precisely what the statute categorically requires."

The defendants summarize their arguments by challenging the court's findings of fact nos. 7, 8, 10, and 11 and conclusion of law no. 3, arguing that the court should have adopted their requested findings of fact. The court's finding no. 7 in effect states that as a result of plaintiff's accident on April 10, 1974 and the subsequent aggravation on or about May 23, 1974, the plaintiff suffered a herniated or protruded disc causing him permanent total disability. The court's finding no. 8 connects the injury and resulting disability to the April and May incidents. Findings nos. 10 and 11 found the plaintiff's disability to be permanent.

The rule regarding a review of findings of fact is that the findings will not be disturbed if supported by substantial evidence. *Lyon v. Catron County Commissioners*, 81 N.M. 120, 464 P.2d 410 (Ct.App.1969), cert. denied, 81 N.M. 140, 464 P.2d 559 (1970); *Gammon v. Ebasco Corporation*, supra. Further, we must resolve conflicts in

favor of the successful party and in support of the judgment. *Schrib v. Seidenberg*, 80 N.M. 573, 458 P.2d 825 (Ct.App.1969). It follows, therefore, that the trial court's findings of fact and conclusions of law must be affirmed unless undisputed facts come before this Court, the only conclusion of which is contrary to the lower court's conclusion, or unless manifestly wrong or clearly opposed to the evidence. *Kosmicki v. Aspen Drilling Company*, 76 N.M. 234, 414 P.2d 214 (1966); *Lyon v. Catron County Commissioners*, supra.

In the instant case, the doctor for the insurance company testified that he thought it within a reasonable medical probability that the surgery at the herniated disc that was removed was a natural and direct result of the accident. Dr. Adler, who was one of plaintiff's expert witnesses, testified that in his opinion, it was a reasonable medical probability that the complaints the patient had at the time he cared for him would be directly related to the sequence of events which began with his injury while at work on April 10, 1974. There was substantial evidence to support the court's findings of fact and conclusions of law. See *Lyon v. Catron County Commissioners*, supra; *Gammon v. Ebasco Corporation*, supra; *Stuckey v. Furr Food Cafeteria*, 72 N.M. 15, 380 P.2d 172 (1963).

### Point II

Defendants' Point II again challenges findings of fact nos. 7, 8, 10 and 11 as not being supported by substantial evidence, and conclusion of law no. 2. Under defendants' Point I the evidence was substantial to sustain an award of total and permanent disability benefits under the New Mexico Workmen's Compensation Act, § 59–10–1 et seq., supra.

The thrust of defendants' argument under Point II is that pain is not a disability factor and no compensation should be allowed. The defendants cite *Blancett v. Homestake-Sapin Partners*, 73 N.M. 47, 385 P.2d 568 (1963) and *Gomez v. Hausman Corporation*, 83 N.M. 400, 492 P.2d 1263 (Ct.App.1971), cert. denied, 83 N.M. 395, 492

P.2d 1258 (1972). However, those cases do not apply to the facts in the instant case. The defendants are asking us to weigh the evidence, and that we cannot do. We have reviewed the evidence and find substantial evidence to support the court's conclusion no. 2. *Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977), cert. denied, 90 N.M. 254, 561 P.2d 1347 (1977).

### Point III

The defendants argue that the causal relationship testimony was based on an incomplete or an inaccurate history without an adequate foundation; thus the court's findings nos. 4 through 8, 10, and 11 were erroneous. Defendants argue that a doctor cannot testify to facts of a particular accident based on the history related to him by his patient. The defendants support this argument by saying that plaintiff never mentioned an earlier Nevada accident to the doctors who testified for him; pointing to contradictions and omissions in an expert opinion. Dr. Adler considered the possibility of the old injury and concluded that it would not affect his opinion as to causation of plaintiff's disability. Defendants' reference to this old injury from which plaintiff was healed was not necessary to the history relating to this disability. The trial court was the trier of facts. As this Court said in *Martinez v. Fluor Utah, Inc.*, 90 N.M. 782, 568 P.2d 618 (Ct.App.1977), quoting from *Montano v. Saavedra*, 70 N.M. 332, 373 P.2d 824 (1962):

"It is for the trier of the facts to weigh the testimony, determine the credibility of the witnesses, and, to reconcile inconsistent statements and say where the truth lies . . . .

"True enough, there was testimony of the medical expert from which the trial court might have found otherwise. Nevertheless, it was for the trial court, as the fact finder, to evaluate all the evidence and determine where the truth lay . . .."

It was the duty of that court to hear the evidence, weigh it for credibility and make a decision. *Ortega v. New Mexico State*

*Highway Department,* 77 N.M. 185, 420 P.2d 771 (1966).

*Point IV*

■ Defendants contend that the court erred in going outside the complaint; arguing that there is lack of substantial evidence to support the court's findings nos. 5 through 8 and conclusion no. 3, treating the May 24th accident or incident as a legal aggravation, when the complaint solely treated the May 24th incident as being caused by the April 10th accident.

A review of Dr. Altman's and Dr. Adler's testimony permits us to conclude there was substantial evidence to support the court's finding of aggravation as both doctors knew of the incident of May 24th and took it into account in forming their opinions as to disability. The defendants' argument under this point has no merit.

*Cross-Appeal of Plaintiff*

The plaintiff argues that the trial court erred in refusing to award medical expenses incurred by him because the employer had not offered nor made provision to pay claimant's medical expenses for this work-related accident pursuant to § 59–10–19.1, N.M.S.A. 1953 (Interim Supp., 1976–77).

The court's findings state that the surgery performed on the plaintiff was necessary as a result of his accident-related injuries. The court's finding no. 14 states, in effect, that the employer had complied with § 59–10–19.1, supra, of the Workmen's Compensation Act relating to provisions for medical attention. The court then concluded the medical expenses incurred by plaintiff on his own were not recoverable. Section 59–10–19.1, supra.

Plaintiff challenges finding no. 14 and conclusions nos. 7, 8, and 9. Although plaintiff testified that his employer told him to file an accident report so the company's insurance could pay his medical expenses, his employer testified that neither he nor the insurance company sent plaintiff to Dr. Miller. Plaintiff did not see a doctor until after the incident of May 24, 1974, at which time he visited Dr. Brighton in Santa Fe once; went to a chiropractor, Dr. Rodriguez; and finally went to Dr. Miller at the request of his attorney on June 7, 1974. In fact, he did not even fill out the accident report until June 10, 1974, at which time his employer learned of his previous visits to the doctors.

The trial court's statement that the plaintiff stopped going to the company's suggested doctor, "without requesting any substitution of doctors and undertook on his own to seek other medical services" is not supported by the evidence. In fact, there is no evidence that his employer or the insurer offered any medical treatment at all, except in the most vague and general terms.

The question raised by this issue is one of law: whether the employer's remark to the plaintiff about getting his medical bills paid and the insurer's payments to Drs. Rodriguez and Miller were sufficient to meet both the statutory requirement that the employer pay all reasonably necessary medical expenses, and the provision that, if the employer "has made provision for, and has at the service of the workman at the time of the accident," adequate medical services, the employer is under no obligation to furnish additional services.

■ New Mexico cases have long followed the rule that furnishing medical services under § 59–10–19.1, supra:

> "imports more than a mere passive willingness or duty to furnish medical and surgical aid when called upon. It allows the employer to select his own physicians and surgeons for the care of his injured employees, but imports that arrangements should be made in advance, or that some one should be at hand in authority to provide medical and surgical care in cases of emergency . . . . *Case of Ripley,* 229 Mass. 302, 118 N.E. 638; *In re Panasuk (In re American, etc., Co.),* 217 Mass. 589, 105 N.E. 368." *Garcia v. Genuine Parts Co.,* 90 N.M. 124, 560 P.2d 545 (Ct.App.1977), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977); *quoting, Johnson v. Armstrong & Armstrong,* 41 N.M. 206, 66 P.2d 992 (1937).

The defendants never signified more than a "mere passive willingness" to furnish medical care, and therefore, do not meet this test.

*Garcia v. Genuine Parts Co.*, supra, was similar to the instant case. Plaintiff in that case went to an emergency room and a Dr. Cornish on her own; then switched to a Dr. Hollinger, whose services the trial court decided were necessary. Defendants paid for the emergency room and Dr. Cornish, but claimed they were not liable for expenses incurred in connection with Dr. Hollinger's treatment, claiming:

". . . that plaintiff never requested them to provide additional medical services, never asserted that Dr. Cornish's services were inadequate, failed to keep an appointment with Dr. Cornish and on the day of the unkept appointment, went to Dr. Hollinger on her own initiative.

. . .

"Defendants' position is that they had no obligation other than to respond to requests for medical attention. We have pointed out that 'furnish' in Paragraph A of § 59–10–19.1, supra, requires more than a passive willingness to respond to a demand. . . . 'Furnish' in Paragraph B also requires more than a passive willingness to respond to a demand." [90 N.M. 124, 128–29, 560 P.2d 545, 549–550.

This same reasoning applies to the case at bar, and the evidence does not support the court's finding no. 14 and conclusions nos. 7, 8, and 9.

Plaintiff further argues that the trial court erred in failing to award costs incurred in proving matters which defendants denied. The plaintiff submitted an application to pay costs pursuant to § 21–1–1(37)(c), N.M.S.A. 1953 (Repl. Vol. 4, 1970).

■ Judge Donnelly's order, denying the application for costs, failed to meet the mandatory requirements set out in § 21–1–1(37)(c), supra, that the trial court must specifically find that there were good reasons for the denial or that the admission sought were of no substantial importance. *Schrib v. Seidenberg*, 80 N.M. 573, 458 P.2d 825 (Ct.App.1969).

Although defendants correctly point out that some of the expenses listed were incurred before defendants filed their responses to requests for admission, plaintiff did prove substantially all the matters denied by defendants. This issue is also remanded to the trial court and if the trial court finds in its discretion that some of these costs are not allowable, at a minimum, a proper order should be entered.

■ The plaintiff argues further that the trial court committed error in failing to award him interest on the judgment at the statutory rate pursuant to § 59–10–16, N.M.S.A. 1953 (2d Repl. Vol. 9, pt. 1, 1974) and § 50–6–3, N.M.S.A. 1953 (Repl. Vol. 8, pt. 1, 1962). The granting of interest is within the discretion of the trial court and is not a matter of right under the statute.

The plaintiff made no attempt to show that the court abused its discretion. Thus, the refusal of the trial court to grant interest must be affirmed.

■ The plaintiff also argues that the trial court committed error by failing to award him the costs of Dr. Altman's deposition. The trial court authorized the deposition in this case, pursuant to § 59–10–13.9, N.M.S.A. 1953 (2d Repl. Vol. 9, pt. 1, 1974). The defendants are liable for the costs of the deposition of Dr. Altman. As this Court clearly stated in *Escobedo v. Agriculture Products Co., Inc.*, 86 N.M. 466, 525 P.2d 393 (Ct.App.1974):

"The trial court had no authority to order plaintiff to pay the cost of the deposition, 'the provision of the Workmen's Compensation Act notwithstanding.' . . . Section 59–10–13.9, supra, contains express provisions concerning the cost of depositions in compensation cases. These express provisions directly conflict with any discretion in the trial court concerning cost of depositions under the rules of civil procedure."

In other words, because the lower court found good cause, which it had to find to authorize the deposition in the first place, there is no discretion in payment of cost.

Finally, plaintiff argues that the trial court erred in failing to find him in need of vocational rehabilitation services. Section 59–10–19.2, N.M.S.A. 1953 (2d Repl. Vol. 9, pt. 1, 1974) provides in pertinent part:

". . . the employee *shall be entitled* to such vocational rehabilitation services, including retraining or job placement, as may be necessary to restore him to suitable employment where he is unable to return to his former job." [Emphasis added]

We have reviewed the evidence and conclude that plaintiff is entitled to rehabilitation services.

Therefore, the challenged judgment awarding total and permanent disability benefits is affirmed.

We reverse the judgment of the court as to plaintiff's cross-appeal, excepting only the court's refusal to grant interest on the judgment. We remand to the trial court with the following instructions:

That the defendants pay the plaintiff's out-of-pocket medical expenses because of the employer's failure to offer or make provision for payment of plaintiff's accident-related medical expenses; that the plaintiff recover the following costs from the defendants: the cost of Dr. Altman's deposition; the costs of plaintiff's vocational rehabilitation services; and the costs incurred in proving matters denied, or the entry of a proper order should any of these costs not be allowable.

The plaintiff is awarded $1,750.00 for the services of his attorney on this appeal.

IT IS SO ORDERED.

SUTIN, J., specially concurring.

HERNANDEZ, J., concurs.

SUTIN, Judge (specially concurring).

I concur.

A. *Lawyers should read and follow Rule 9(m) on "Statement of Proceedings."*

Defendant's Statement of Proceedings contains 13 pages of facts, evidence, and argument. Rule 9(m) of the Rules Governing Appeals [§ 21–12–9(m), N.M.S.A. 1953 (Repl. Vol. 4, 1975 Supp.)] reads in pertinent part:

The statement of proceedings shall contain the following:

(1) A brief summary of such portions of the pleadings and rulings of the court thereon as are necessary to an understanding of the issues material to the review. . . .

(2) If the trial court has made findings of facts, a concise chronological summary of such findings . . . .

For a commentary on this rule, see *Allen v. Williams*, 77 N.M. 189, 420 P.2d 774 (1966). "In his brief in chief defendant has demonstrated either a disregard for or a lack of familiarity with Supreme Court Rule [9(m)]." *Macnair v. Stueber*, 84 N.M. 93, 500 P.2d 178 (1972). "[W]e affirm . . . [the judgment below] because of the total failure of appellant to comply with the requirements of [9(m)]." *Tafoya v. Tafoya*, 84 N.M. 124, 500 P.2d 409 (1972); *Morris v. Dodge Country, Inc.*, 85 N.M. 491, 513 P.2d 1273 (Ct.App.1973), Sutin, J., dissenting. "As long as this court condones noncompliance with rules of appellate procedure, the rules will have a useless life." *Beckwith v. Cactus Drilling Corporation*, 84 N.M. 565, 575, 505 P.2d 1241, 1251 (Ct.App.1972), Sutin, J. partly dissenting. I should like to repeat what I said in *May v. Baklini*, 85 N.M. 150, 154, 509 P.2d 1345, 1349 (Ct.App. 1973):

Appellants in damage suits, angry and frustrated by loss, blindly appeal in search of reversal. Many attorneys who try and appeal cases are incompetent or lack the time to read the law or follow the rules of procedure. Competent attorneys successfully appeal. Clients have a duty to seek counsel who specialize in trial and appellate work. When attorneys fail to follow the standards of the legal profession in this state, they should be subject to claims for malpractice.

I write this, not only to assist lawyers, but to assist the public and this court. Constantly, we are called on to do re-

search work, to make decisions based on our own labor, and cast briefs aside.

\* \* \* \* \* \*

Lawyers in appellate practice should read and follow Supreme Court Rules 5 to 22 [§§ 21–2–1(5) to (22), N.M.S.A. 1953 (Repl. Vol. 4)], each time an appeal is taken.

B. *Plaintiff established medical probability causation.*

Section 59–10–13.3, N.M.S.A. 1953 (2d Repl. Vol. 9, part 1) reads:

A. *Claims for workmen's compensation shall be allowed only :*

(1) when the workman has sustained an accidental injury arising out of, and in the course of his employment;

(2) when the accident was reasonably incident to his employment; and

(3) *when the disability is a natural and direct result of the accident.*

B. in all cases where the defendants deny that an alleged *disability* is a natural and direct result of the accident, *the workman must establish that causal connection as a medical probability by expert medical testimony.* No award of compensation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists. [Emphasis added.]

From the time of the enactment of this section, due to poor performance in the courtroom, a chronic illness has overrun the decisions in New Mexico.

For opinions in favor of the employee, see, *Yates v. Matthews,* 71 N.M. 451, 379 P.2d 441 (1963); *Stuckey v. Furr Food Cafeteria,* 72 N.M. 15, 380 P.2d 172 (1963); *Frederick v. Younger Van Lines,* 74 N.M. 320, 393 P.2d 438 (1964); *Sessing v. Yates Drilling Company,* 74 N.M. 550, 395 P.2d 824 (1964); *Ross v. Sayers Well Servicing Company,* 76 N.M. 321, 414 P.2d 679 (1966); *Lyon v. Catron County Commissioners,* 81 N.M. 120, 464 P.2d 410 (Ct.App.1969); *Brannon v. Well Units, Inc.,* 82 N.M. 253, 479 P.2d 533 (Ct.App.1970) (language questioned); *Huerta v. New Jersey Zinc Compa-* ny, 84 N.M. 713, 507 P.2d 460 (Ct.App.1973); *Maes v. John C. Cornell, Inc.,* 86 N.M. 393, 524 P.2d 1009 (Ct.App.1974).

For opinions in favor of the employer, see, *Montano v. Saavedra,* 70 N.M. 332, 373 P.2d 824 (1962); *Gammon v. Ebasco Corporation,* 74 N.M. 789, 399 P.2d 279 (1965); *Renfro v. San Juan Hospital, Inc.,* 75 N.M. 235, 403 P.2d 681 (1965); *Torres v. Kennecott Copper Corporation,* 76 N.M. 623, 417 P.2d 435 (1966); *Romero v. Zia Company,* 76 N.M. 686, 417 P.2d 881 (1966); *Weston v. Carper Drilling Company,* 77 N.M. 220, 421 P.2d 435 (1966); *Quintana v. Trotz Construction Company,* 79 N.M. 109, 440 P.2d 301 (1968), Carmody, J., dissenting; *Gallegos v. Kennedy,* 79 N.M. 590, 446 P.2d 642 (1968); *Corzine v. Sears, Roebuck and Company,* 80 N.M. 418, 456 P.2d 892 (Ct.App. 1969); *Bertelle v. City of Gallup,* 81 N.M. 755, 473 P.2d 369 (Ct.App.1970); *Mayfield v. Keeth Gas Company,* 81 N.M. 313, 466 P.2d 879 (Ct.App.1970); *Chaffins v. Jelco, Incorporated,* 82 N.M. 666, 486 P.2d 75 (Ct. App.1971); *Niederstadt v. Ancho Rico Consolidated Mines,* 88 N.M. 48, 536 P.2d 1104 (Ct.App.1975).

To explain the meaning of § 59–10–13.3, we must make a fortress out of a dictionary. It needs amplification. The word "disability" is used in its ordinary sense. This section does not say "disability as defined in this Act." The ordinary meaning of disability is inability to pursue an occupation, or disablement. In a special concurring opinion in *Witcher v. Capitan Drilling Company,* 84 N.M. 369, 374, 503 P.2d 652, 657 (Ct.App.1972), I said:

The word "disability" simply means "disablement" resulting from an accidental injury.

To determine the *extent* of disability, we turn to §§ 59–10–12.18 and 59–10–12.19. These sections define "total disability" and "partial disability." In *Witcher,* I also said:

If Artur Rubinstein, the noted concert pianist, suffers the loss or total loss of use of a finger, he is totally disabled. [84 N.M. at 374, 503 P.2d at 657.]

This was true as to some of his colleagues, he wrote, but not as to himself. As to himself, he said:

As a matter of fact, a few years ago I hurt my fourth finger of the right hand so badly that I was unable to use it for a few concerts, but all I had to do was to refinger the pieces I was going to play to make it possible not to have that finger involved.

Mr. Rubinstein suffered partial disability.

In addition to use of the word "disability," § 59–10–13.3(B) contains the phrase "as a medical probability." This phrase means to me that an employee must establish, from a doctor's point of view, that the accident *probably* caused the employee's inability to work. The word "probably" is not a word of certainty. It takes on the shade of "very likely," "presumably," "apparently." To make a prima facie case, an employee needs the assistance of a doctor. When the fact is denied, a doctor must testify that from the nature of the accident and injuries suffered, the accident very likely caused the employee's inability to work.

In trial, to avoid the chronic quarrel on this subject, the lawyer need only ask the following question:

In your opinion, did the accident cause plaintiff's inability to work?

If the answer is "yes," "probably," or "very likely," the answer is sufficient to establish an issue of fact for the workman.

If a doctor answers "probably not," "no," "possibly," "speculatively," or "it could," the answer is sufficient to establish an issue of fact for the employer. It has been held that if a doctor testifies that the accident "could, rather than that it did as a medical probability, cause the disability. . . . Such testimony does not rise above speculation and surmise." *Renfro*, supra, [75 N.M. at 238, 403 P.2d at 683.]

When such medical testimony is given for the workman and the employer, the choice to accept rests with the district judge. The finding made is final.

If an attorney does not specifically question a doctor about accident-injury causation, the chronic illness in court will continue. Then, courts must try to delineate the meaning of the doctor's testimony. To do so is difficult. Did the doctor's testimony "signify an understandable and reasonable proximity of cause and effect as distinguished from remote and doubtful consequences resulting from a given occurrence"? *Stuckey*, supra, [72 N.M. at 16, 380 P.2d at 173.] This is an unmethodical way to reach a solution. The district court finding can go either way and the loser weeps on appeal, because if it is "extremely difficult to determine with any degree of certainty from the transcript whether . . . (the doctor) intended to testify that the disability which he found . . . was causally connected with the accident as a medical probability. . . .", Justice Moise said we must consider the evidence "most favorable to support the findings made by the trial court." *Sessing*, supra, [74 N.M. at 554, 395 P.2d at 826.]

This problem does not exist in the instant case. A doctor was asked whether plaintiff's injuries were, within a reasonably medical probability, caused by the accident. The doctor answered that at the time he cared for plaintiff, the accident would be directly related to his injury. He reiterated this opinion on cross-examination. On the other hand, defendant did not question his doctor on medical probability.

On appeal, defendants argue that the judgment was based on speculation; that the causal relationship was based upon an incomplete or inadequate history, and that the history of plaintiff's injury was without adequate foundation. Nevertheless, defendants argue that "No doctor in this case testified that the *disability* was caused by the accident of April 3 or 10, 1974"; that "no matter how positive a doctor is (on) causal connection between the injury he treats and an accident months or years before, . . . he cannot establish the facts of that accident and if he discusses an accident which occurred in May even though he says it is April, he is simply wrong and although he might be of legal assistance in another claim by the litigant, his conclusion is valueless . . . .." This argument is both contradictory and unper-

suasive. It is a desperate attempt to reverse the findings of the trial court.